# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00245-CV

---

**Raggio-2204 Jesse Owens, LLC and Stacey R. Hammer, Appellants**

**v.**

**Wayne Morgan; David M. Gottfried; J. Patrick Sutton; Stewart Title of Austin, LLC; Bockholt Realty, LLC; Brent Bockholt; and Susan Bockholt, Appellees**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-003962, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This appeal encompasses numerous claims in cases filed by appellants Raggio-2204 Jesse Owens, LLC and Stacey Hammer in which they sought damages based on various theories arising out of a turnover and sale of real property located at 2204 Jesse Owens Drive.[1] We will affirm in part and reverse and remand in part.

### BACKGROUND & PROCEDURAL HISTORY

These consolidated cases arise from the turnover and sale of real property to satisfy a void judgment for sanctions. The trial court rendered the sanctions judgment and turnover orders after its plenary jurisdiction had expired. But by the time the judgment and

---

[1] This appeal involves two trial court cases in Travis County (Case No. D-1-GN-19-003962 and No. D-1-GN-20-004869) that were consolidated into one (Case No. D-1-GN-19-003962) on February 3, 2021. Hammer and Raggio appeal from the April 4, 2023 final judgment dismissing their claims against all appellees.

orders were appealed, held void, and vacated on remand, the real property—and the personal property that had been stored inside—had already been sold to third-party buyers.

Stacey Hammer is the individual who was sanctioned. Hammer is a former member and manager of Raggio-2204 Jesse Owens, LLC (Raggio), an entity through which she owned the real property subject to the turnover and sale (the Jesse Owens Residence).

Wayne Morgan is the individual who obtained the sanctions judgment and moved for the appointment of a turnover receiver. David Gottfried is Morgan's lawyer.

Patrick Sutton is the receiver appointed by the trial court to facilitate the turnover and sale of the Jesse Owens Residence. Bockholt Realty is the real estate broker and agent retained by Sutton for the turnover and sale, Brent and Susan Bockholt are its owners, and Stewart Title is the title company that closed the sale. (Bockholt Realty, the Bockholts, and Stewart Title are collectively referred to as the Real Estate Parties).

After the sanctions judgment and turnover orders were vacated and the receivership concluded, Hammer and Raggio filed two separate lawsuits, which were eventually consolidated. In these two suits, they asserted a variety of claims against Morgan, Gottfried, Sutton, and the Real Estate Parties. Each claim arose from the court-ordered turnover and sale of the Jesse Owens Residence.

### Hammer and her husband form Raggio to own the Jesse Owens Residence

In 2009, Hammer and her husband formed Raggio for the sole purpose of owning the Jesse Owens Residence as an investment property. Raggio's Certificate of Formation lists Stacey Hammer as the initial registered agent and managing member.

2

After Raggio's formation, the prior owner of the Jesse Owens Residence executed an Assumption Warranty Deed whereby he granted, sold, and conveyed the Jesse Owens Residence to Raggio. Over the following years, the Hammers, through Raggio, earned income from the property by leasing it to tenants.

***Hammer and her husband divorce, and Hammer becomes the sole member of Raggio and retains a non-possessory interest in her former marital residence***

In 2012, Hammer and her husband divorced. Under the divorce settlement, Hammer received her husband's interest in Raggio and thereby became its sole member. Hammer's husband continued to live in the couple's marital residence (the Costa Bella Residence), but Hammer retained a non-possessory interest, specifically, a share of the proceeds from any future sale of the property.

***UFCU forecloses on Hammer's former marital residence and sells it to El Campo***

At some point, Hammer's husband stopped paying the mortgage on the Costa Bella Residence. In April 2014, the Hammers' mortgage lender, United Federal Credit Union, foreclosed on the property. Later that fall, UFCU sold the Costa Bella Residence to Morgan's real estate business, El Campo Real Estate, L.P.

***Hammer sues UFCU and El Campo***

In February 2015, Hammer filed a lawsuit against El Campo and UFCU (the UFCU Suit), asserting various claims arising out of the foreclosure of the Costa Bella Residence. El Campo and UFCU both moved for summary judgment.

3

### *The trial court grants summary judgment for El Campo*

In June 2015, the trial court granted summary judgment for El Campo. The trial court severed Hammer's claims against El Campo to a new cause number (the El Campo Suit) and dismissed those claims with prejudice. Hammer's remaining claims against UFCU proceeded under the original cause number.

### *The trial court grants summary judgment for UFCU*

On August 18, 2015, the trial court granted summary judgment for UFCU (the UFCU Judgment). The UFCU Judgment included the following finality language: "Because all claims for relief by [Hammer] have been denied, this order shall be entered as a final judgment in this action."

### *Morgan moves to sanction Hammer*

On December 1, 2015, El Campo's owner, Wayne Morgan, moved to sanction Hammer for having recorded a lis pendens on the Costa Bella Residence. Morgan filed his motion in his individual capacity, not in his representative capacity on behalf of El Campo. And he filed the motion in the UFCU Suit, not the severed El Campo Suit. The next day, the trial court's plenary jurisdiction over the UFCU Suit expired. *See Hammer v. University Fed. Credit Union*, No. 03-16-00262-CV, 2017 WL 1228871, at *4 n.4 (Tex. App.—Austin Mar. 30, 2017, no pet.) (mem. op.) (noting that trial court's plenary jurisdiction expired December 2, 2015).

### *The trial court grants Morgan's motion and sanctions Hammer*

In January 2016, not realizing its plenary jurisdiction had already expired, the trial court held a hearing on Morgan's motion for sanctions. Hammer did not appear. She alleges she

received no notice of the hearing. Although she had moved out of state, Gottfried sent notice to her Texas post office box and not to her email address on file with the trial court.

At the end of the hearing, the trial court granted Morgan's motion and signed an order awarding sanctions in the amount of $37,599.80 (the Morgan Judgment). Like the UFCU Judgment, the Morgan Judgment included finality language: "This judgment is intended to resolve all the claims of all the parties and to be final and appealable."

### Hammer appeals the UFCU Judgment and the Morgan Judgment

On April 20, 2016, Hammer appealed the UFCU Judgment and the Morgan Judgment on the merits. In response, UFCU filed a motion to dismiss, arguing that the UFCU Judgment operated as the final judgment in the UFCU Suit and that, as a result, Hammer's notice of appeal was untimely. *See* Tex. R. App. P. 26.1 (time to perfect appeal).

### While Hammer's appeals are pending, the trial court appoints Sutton as turnover receiver to take possession of and sell the Jesse Owens Residence to satisfy the Morgan Judgment

While Hammer's appeal was pending, Morgan moved for the appointment of a turnover receiver to take possession of and sell the Jesse Owens Residence to satisfy the Morgan Judgment. At the time, the deed on file with the county clerk showed that Raggio (which was not a party to the UFCU Suit or the El Campo Suit), not Hammer, held title to the Jesse Owens Residence. But the documents on file with the Secretary of State showed that Raggio had forfeited its corporate charter in August 2014 and that Hammer had been Raggio's sole member at the time of forfeiture.

In June 2016, the trial court granted Morgan's motion and signed a Turnover Order. In its Turnover Order, the trial court found that Hammer owned the Jesse Owens Residence and appointed Sutton as turnover receiver to take possession of and sell it to satisfy

5

the Morgan Judgment. The trial court also clarified that the order did not "compel turnover" of Hammer's "exempt property." In its Turnover Order, the trial court gave Sutton the power and authority to:

- ensure that Hammer did not interfere with the collection of the Morgan Judgment as it related to the sale of the Jesse Owens Residence,

- take all necessary steps to ensure that the proceeds of the sale of the Jesse Owens Residence that would otherwise be payable to Hammer be applied toward payment of the Morgan Judgment after the payment of liens created before the date of the order,

- receive in trust sufficient proceeds of the sale of the Jesse Owens Residence that would otherwise be payable to Hammer to pay Morgan,

- coordinate with a real estate broker to sell the Jesse Owens Residence, and

- pay himself receiver's fees from the proceeds from the sale of the Jesse Owens Residence.

The trial court further ordered that Hammer turn over to Sutton:

- all documents and records related to the Jesse Owens Residence, and

- Raggio's limited liability company documents and any other documents evidencing Hammer's interest in Raggio.

The trial court ordered that, in the event Hammer reinstated Raggio, Sutton would have control and ownership of any proceeds held or distributions made by Raggio.

***Hammer objects to the sale, claiming she doesn't own Raggio or the Jesse Owens Residence, but the publicly available records suggest otherwise***

After his appointment as receiver, Sutton entered into a contract to sell the Jesse Owens Residence to John and Kathleen Hattaway. Sutton then filed a motion to approve the sale. The trial court held a hearing on Sutton's motion in August 2016.

At the hearing, Morgan and Sutton appeared through counsel, Hammer appeared pro se, and Raggio purported to appear through its manager, non-lawyer Joseph Ramey. The principal issue discussed was whether Hammer owned the Jesse Owens Residence.

In arguing that Hammer owned the property, Sutton offered into evidence certified records from the Secretary of State. These certified records included:

- Raggio's Certificate of Formation, dated February 5, 2009, identifying Hammer as the sole member and organizer,

- a Letter of Forfeiture, dated August 1, 2014, by which the Secretary of State forfeited Raggio's corporate charter,

- a Tax Clearance Letter of Reinstatement, dated August 3, 2016, notifying Raggio that it had met all franchise tax requirements for reinstatement, and

- a Change of Registered Agent, dated August 4, 2016, changing Raggio's registered agent from Hammer to Hammer's sister, Donna Gregory.

The records also included a Certificate of Amendment, dated August 15, 2016, stating that Gregory was "a holder in due course of 100% of the membership units" and that an "open instrument of debt incurred in exchange for 100% ownership units on August 12, 2015." The Certificate of Amendment listed Gregory as Raggio's director, president, and managing member. It further listed Ramey and Hammer as contracted managers.

7

Sutton explained that he had researched information relating to the Jesse Owens Residence, including the corporate records on file with the Secretary of State that he had offered into evidence. Sutton explained that these records reflected that Raggio had forfeited its charter and that Hammer had been the sole member at the time of forfeiture. Sutton further observed that the Certificate of Amendment post-dated the receivership and was therefore void because it was made without the trial court's approval. *See Neel v. Fuller*, 557 S.W.2d 73, 76 (Tex. 1977) (when property is placed in receivership, any conveyance without court approval has no effect). Sutton suggested that Hammer and Gregory had attempted to change the ownership and management of Raggio in response to the receivership.

In response, Hammer testified that she had no ownership interest in the Jesse Owens Residence or in Raggio and that the records on file with the Secretary of State when Sutton was appointed did not accurately reflect the ownership of Raggio at that time. Hammer testified that the Jesse Owens Residence was owned by Raggio, which was in turn owned by her sister, Gregory. Hammer explained that she had transferred 100% of her interest in Raggio to Gregory on August 12, 2015, and that she had signed and notarized a quitclaim deed transferring title to the Jesse Owens Residence from Raggio to Gregory. However, Hammer further testified that she did not currently possess the transfer documents or the quitclaim deed but that she would be able to produce them at a later date. She admitted that she never filed the transfer documents with the Secretary of State and never recorded the quitclaim deed with the county clerk.

At the end of the hearing, the trial court found there to be no credible evidence that Gregory owned Raggio or the Jesse Owens Residence. The trial court found the timing of the purported transfer from Hammer to Gregory to be "pretty suspicious in light of the underlying lawsuit." But the trial court declined to make a ruling. Instead, it proposed a

temporary solution: Since Hammer was already trying to sell the Jesse Owens Residence, and since Sutton's contract with the Hattaways was within the "ballpark" of what Hammer was asking for, the parties could move forward with the sale to the Hattaways, pay off the note, and deposit the remaining funds in the registry of the court pending resolution of the issue of ownership.

***The trial court approves the sale and orders Sutton to allow Hammer to remove her personal property from the house before closing***

The parties agreed to the trial court's proposal, and the trial court signed an order authorizing the sale of the Jesse Owens Residence and ordering that Sutton pay off the mortgage and deposit the remaining proceedings into the registry of the court.

As closing approached, Sutton requested that the trial court order the removal of Hammer's personal property from the Jesse Owens Residence, which Hammer had been storing at the house since before Sutton's appointment. The trial court then ordered that Sutton allow Hammer's associate Ramey to enter the Jesse Owens Residence under a constable's supervision to remove Hammer's personal property.

***Sutton complies with the trial court's order, but Hammer fails to remove her personal property***

Sutton complied with the order and arranged for two constables to come to the house so Ramey could remove Hammer's property. Ramey arrived at the scheduled date and time, was granted access to the Jesse Owens Residence, but did not remove Hammer's property.

***The sale closes, and Hammer's personal property is conveyed to the buyers along with the Jesse Owens Residence***

Sutton filed an emergency advisory with the trial court, informing the trial court and Hammer that the personal property at the Jesse Owens Residence would be conveyed with

9

the house unless Hammer removed it before closing. Hammer again failed to do so, and Sutton amended the contract to provide that all personal property stored inside the house would "convey with the Property." The sale closed, and Hammer's personal property was conveyed with the house to the Hattaways.

### *The trial court orders Sutton to distribute the proceeds from the sale to Morgan*

About a month after the closing, the trial court signed an order directing Sutton to distribute the proceeds from the sale to Morgan to satisfy the Morgan Judgment and then to distribute the remaining proceeds to Raggio, as requested and agreed to by Hammer (the Distribution Order). However, the next day, Hammer filed for bankruptcy, resulting in a stay of all proceedings in the UFCU Suit. Morgan never received any proceeds from the sale of the Jesse Owens Residence.

### *We dismiss Hammer's appeal for lack of jurisdiction, holding that the UFCU Judgment operated as the final judgment in the UFCU Suit and that Hammer's appeals were therefore untimely*

After the bankruptcy stay was lifted, on March 30, 2017, we issued a memorandum opinion dismissing Hammer's appeals for lack of jurisdiction. *Hammer*, 2017 WL 1228871, at *4. We held that the UFCU Judgment operated as the final judgment in the UFCU Suit, and that, as a result, Hammer's deadline to appeal began to run on the date the UFCU Judgment was signed. *Id.* We further held that Hammer's deadline was then extended by Hammer's filing a post-judgment motion. *Id.* We concluded that Hammer's deadline for filing an ordinary notice of appeal had been November 16, 2015, and that her deadline to file a notice of a restricted appeal had been February 18, 2016—both of which were before she filed her actual appeal on April 20, 2016. *Id.* Importantly for purposes of this appeal, we noted that the

10

trial court's plenary jurisdiction had expired on December 2, 2015, and that, as a result, the Morgan Judgment was void and thus failed to operate as a modified judgment restarting Hammer's appellate deadlines. *Id.* at *4 n.4.

Morgan filed a motion for rehearing and later a supplemental motion for rehearing, arguing, in part, that we had erred in concluding that the UFCU Judgment operated as a final judgment because, Morgan insisted, he was a party in the UFCU Suit with a pending counterclaim for attorney's fees against Hammer at the time the trial court signed the order. *But see id.* at *3 (concluding Morgan was never individual defendant in UFCU Suit and any vicarious claim against Morgan as general partner of El Campo was disposed of when El Campo obtained summary judgment and Hammer's claims against it were severed). Rejecting these arguments, we denied Morgan's motion for rehearing and his supplemental motion for rehearing.

***The trial court enters a judgment nunc pro tunc that removes the finality language from the UFCU Judgment***

Morgan then filed a motion for judgment nunc pro tunc in the trial court. In his motion, Morgan argued that the UFCU Judgment contained a clerical error because "it incorrectly denoted that it denied all claims for relief by [Hammer] and was a final judgment." In addition, Morgan again argued that the UFCU Judgment should not have been considered final because the judgment did not dispose of his pending claim for attorney's fees. ***Morgan's motion made no mention of our memorandum opinion***, but instead, Morgan requested that the

11

trial court "correct" the UFCU Judgment to reflect that it only disposed of claims for relief by Hammer against UFCU and therefore was not the final judgment in the UFCU Suit.[2]

Following a hearing, the trial court granted Morgan's motion and signed a judgment nunc pro tunc that found that: (1) the finality language in the UFCU Judgment had been a clerical error and (2) the Morgan Judgment was the final judgment in the UFCU Suit.

### *We vacate the judgment nunc pro tunc and hold that the Morgan Judgment, Turnover Order, and Distribution Order are void*

Hammer filed an appeal from the trial court's judgment nunc pro tunc, and Raggio filed a petition for writ of mandamus challenging the trial court's Distribution Order, arguing that the proceeds belonged solely to Raggio.

We issued two memorandum opinions resolving the matters. In Hammer's appeal, we vacated the judgment nunc pro tunc as an improper attempt to correct a purported legal error after expiration of the trial court's plenary jurisdiction. *Hammer v. Morgan*, No. 03-18-00042-CV, 2018 WL 3384690, at *3–4 (Tex. App.—Austin July 12, 2018, no pet.) (mem. op.). In Raggio's mandamus proceeding, we conditionally granted relief, holding that because the Morgan Judgment was void, the Turnover Order and Distribution Order were also void. *In re Raggio-2204 Jesse Owens, LLC*, No. 03-18-00213-CV, 2018 WL 3384692, at *2–3 (Tex. App.—Austin July 12, 2018, orig. proceeding) (mem. op.). We directed the trial court to vacate the void orders and noted that the trial court retained limited jurisdiction to conclude the void receivership. *Id.* at *3 & n.7.

---

[2] Again, we note, as previously held, that Morgan was not a party in his individual status to the UFCU Suit, and El Campo's claims were severed out of the UFCU Suit into a separate suit before UFCU obtained the final judgment tin the UFCU Suit.

***The trial court vacates the Morgan Judgment, Turnover Order, and Distribution Order, orders that the proceeds from the sale be distributed to Raggio, and concludes the receivership***

On remand, Hammer filed a motion to conclude the receivership. At a hearing on the motion, Hammer's counsel offered evidence that the Jesse Owens Residence had been owned by Raggio (not Hammer) and that Raggio, in turn, was owned by Gregory. The evidence supporting the latter fact included:

- an Assignment of Interest, dated June 23, 2014, transferring 50% of Hammer's interest in Raggio to Gregory, and

- an Assignment of Interest, dated August 12, 2015, transferring Hammer's remaining 50% interest in Raggio to Gregory.

At the end of the hearing, the trial court said that it found the transfers from Hammer to Gregory to be "a little suspicious," but it did not rule on whether the transfers were valid or on who actually owned Raggio.[3] The trial court did, however, rule that Raggio had owned the Jesse Owens Residence and that the proceeds from the sale should be distributed to it.

After the hearing, the trial court signed two orders. Together, these orders concluded the receivership by:

- vacating the Morgan Judgment, Turnover Order, and Distribution Order,

- ordering that Sutton pay Raggio all proceeds from the sale of the Jesse Owens Residence, and

- ordering that the constable and Sutton deliver to Hammer all personal property collected from the Jesse Owens Residence and in their possession, custody, or control.

---

[3] Hammer and her sister Gregory had previously testified that 100% of Hammer's interest had been conveyed in 2015.

*Hammer sues Morgan, Gottfried, and Sutton*

In July 2019, Hammer filed the first of the two instant consolidated cases (the Hammer Suit). Hammer sued Sutton, Morgan, and Morgan's lawyer, Gottfried, asserting claims for malicious prosecution, abuse of process, fraud on the court, conversion, and conspiracy.

*Gottfried files a TCPA motion to dismiss Hammer's claims, which the trial court grants*

In October 2019, Gottfried filed a TCPA motion to dismiss Hammer's claims, arguing that (1) Hammer's claims were based on, related to, or in response to his exercise of the right to petition on behalf of his client Morgan and (2) even if Hammer could establish a prima facie case for her claims, he had established the affirmative defense of attorney immunity entitling him to judgment as a matter of law. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.

The trial court granted Gottfried's TCPA motion, dismissed Hammer's claims against Gottfried, and awarded Gottfried $2,000 in attorney's fees and $100 in sanctions. Gottfried then filed a motion to reconsider and increase the fees and sanctions, which the trial court denied.

*Sutton files a motion for summary judgment on Hammer's claims*

In July 2020, Sutton filed a hybrid motion for summary judgment in the Hammer Suit, arguing there existed no evidence in support of Hammer's claims and asserting several affirmative defenses as traditional grounds, including derived judicial immunity based on his status as court-appointed receiver, res judicata based a federal district court's dismissal of claims against Sutton on judicial-immunity grounds in a related case, and limitations.

***While Sutton's motion is pending, Hammer amends her petition to add a claim for intrusion on seclusion***

While Sutton's motion was pending, Hammer filed an amended petition. In her amended petition, Hammer added a cause of action for intrusion on seclusion based on her discovery that Morgan, while living in the Costa Bella Residence, had inadvertently received a letter from Hammer's bank, opened it, and shared the information with Gottfried, who in turn shared it with Sutton. Neither Gottfried nor Sutton ever filed a dispositive motion seeking dismissal of this claim.

***The trial court grants Sutton's motion for summary judgment and dismisses Hammer's claims***

After Hammer filed her amended petition, the trial court heard Sutton's motion for summary judgment on submission, granted it, and dismissed Hammer's claims against Sutton. Although Sutton's motion had been filed before Hammer's amended petition and therefore had not addressed Hammer's intrusion-on-seclusion claim, the trial court's order dismissed all of Hammer's claims:

> It is, therefore, ORDERED, ADJUDGED, and DECREED that all of Plaintiff Stacey Hammer's claims against Defendant J. Patrick Sutton be dismissed with prejudice to refiling same and that Plaintiff take nothing from Defendant on all claims alleged or which could have been alleged against Defendant.

***Raggio sues Morgan, Gottfried, Sutton, and the Real Estate Parties***

Raggio then filed the second of the two instant consolidated cases (the Raggio Suit). Raggio sued Morgan, Gottfried, Sutton, and the Real Estate Parties for theft, negligence, and wrongful execution and sale of property. Raggio asserted an additional claim against Morgan for malicious prosecution. Raggio sought to hold the defendants jointly and severally

15

liable for "assist[ing] each other and participat[ing] in the unlawful sale and conveyance of the Property."

***Sutton and the Real Estate Parties file a Rule 91a motion to dismiss and a TCPA motion to dismiss, which the trial court grants while deferring fees and sanctions***

In October 2020, Sutton and the Real Estate Parties filed two dispositive motions. First, they filed a Rule 91a motion to dismiss Raggio's claims, arguing that they were entitled to derived judicial immunity and that Raggio's claims were otherwise baseless. Second, they filed a TCPA motion to dismiss Raggio's claims, arguing that (1) Raggio's legal action was based on or in response to their exercise of the right to petition; (2) Raggio could not establish a prima facie case for its claims; and, even if it could, (3) they had established the affirmative defenses of derived judicial immunity and res judicata.

In December 2020, the trial court signed orders granting Sutton and Real Estate Parties' Rule 91 motion to dismiss and TCPA motion to dismiss while deferring its determination of attorney's fees and sanctions.

***Morgan files multiple dispositive motions on Hammer's and Raggio's claims***

In December 2020, Morgan filed multiple dispositive motions in both suits. First, Morgan filed nearly identical pleas to the jurisdiction in the Hammer Suit and the Raggio Suit. But instead of arguing that the trial court lacked subject-matter jurisdiction over Hammer's and Raggio's claims, the majority of Morgan's pleas was devoted to arguing that there existed no evidence in support of Hammer's and Raggio's claims and to asserting various affirmative defenses. Second, Morgan filed nearly identical TCPA motions in the Hammer Suit and the Raggio Suit, arguing that (1) both legal actions were based on or in response to his exercise of the right to petition and (2) Hammer and Raggio could not establish a prima facie case for their

16

claims. Third, Morgan filed nearly identical hybrid motions for summary judgment in the Hammer Suit and the Raggio Suit, arguing that there existed no evidence in support of Hammer's and Raggio's claims, that the evidence conclusively negated Hammer's and Raggio's claims, and that Hammer's and Raggio's claims were barred by the affirmative defenses of res judicata, judicial estoppel, and limitations. Finally, Morgan filed a Rule 91a motion to dismiss in the Raggio Suit (but did not file one in the Hammer Suit).

### Gottfried files a TCPA motion to dismiss Raggio's claims

In January 2021, Gottfried filed a TCPA motion to dismiss Raggio's claims, which made the same arguments as the TCPA motion he had filed in the Hammer Suit.

### The trial court grants Gottfried's TCPA motion and most of Morgan's dispositive motions

In February 2021, the Raggio Suit was consolidated with the Hammer Suit. The trial court then held a hearing on the dispositive motions filed by Morgan and Gottfried.

The next month, the trial court ruled on the motions. The trial court granted Gottfried's TCPA motion to dismiss Raggio's claims and granted Morgan's plea to the jurisdiction on Hammer's and Raggio's claims. The trial court made four additional alternative rulings on Morgan's motions. Specifically, the trial court:

- granted Morgan's motion for summary judgment on Hammer's and Raggio's claims,

- granted Morgan's Rule 91a motion to dismiss Raggio's claims,

- granted Morgan's TCPA motion to dismiss Raggio's claims, and

- denied Morgan's TCPA motion to dismiss Hammer's claims.

The trial court deferred its determination of fees and sanctions for both Gottfried and Morgan.

17

*The trial court awards fees and sanctions against Hammer and Raggio*

Following an evidentiary hearing on fees and sanctions, the trial court signed a series of orders awarding fees and sanctions against Hammer and Raggio. For Morgan, the trial court ordered that:

- Raggio and Hammer take nothing on their claims and causes of action against Morgan,

- Morgan recover against Hammer and Raggio, jointly and severally, attorney's fees in the amount of $46,863.75, and

- Morgan recover against Raggio sanctions in the amount of $50,000.00.

For Gottfried, the trial court ordered that:

- Raggio and Hammer take nothing on their claims and causes of action against Gottfried,

- Gottfried recover against Hammer and Raggio, jointly and severally, attorney's fees in the amount of $22,972.50, and

- Gottfried recover against Hammer and Raggio, jointly and severally, sanctions in the amount of $100,000.00.

And for Sutton and the Real Estate Parties, the trial court ordered that:

- Raggio take nothing on its claims and causes of action against Sutton and the Real Estate Parties,

- Sutton recover against Raggio attorney's fees in the amount of $11,951.00,

- Stewart Title recover against Raggio attorney's fees in the amount of $100.00, and

- Bockholt Realty and the Bockholts recover against Raggio attorney's fees in the amount of $4,000.00.

Hammer and Raggio now appeal.

18

On appeal, Hammer and Raggio raise numerous issues concerning each defendant-appellee, which we renumber and reorganize for clarity. We will discuss Hammer's issues first and then turn to Raggio's.

We have grouped Hammer's issues by defendant. We consider Hammer's issues against Morgan, then Gottfried, and then Sutton.

## HAMMER V. MORGAN

On appeal, Hammer raises three issues concerning Morgan. First, Hammer contends that the trial court erred in granting Morgan's plea to the jurisdiction. Second, Hammer contends that the trial court erred in granting Morgan's motion for summary judgment. Third, Hammer contends that the trial court erred in awarding Morgan attorney's fees in the absence of a legal basis for such an award.

### I. Plea to the jurisdiction

We begin by considering de novo whether the trial court erred in granting Morgan's plea to the jurisdiction. *See Texas Dep't of Transp. v. Self*, 690 S.W.3d 12, 19 (Tex. 2024).

A plea to the jurisdiction is a procedural device used to challenge the court's subject-matter jurisdiction over a claim. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 232 (Tex. 2004). But most of the arguments made in Morgan's plea do not challenge the trial court's subject-matter jurisdiction. Instead, most of Morgan's plea is devoted to arguing that Hammer's claims are barred by res judicata, estoppel, and limitations, Tex. R. Civ. P. 94 (Affirmative Defenses), and to arguing no evidence exists for one or more essential

elements of her claims, Tex. R. Civ. P. 166a(i) (No-Evidence Motion).[4] Because these arguments do not challenge the trial court's jurisdiction, they are not proper grounds for granting a plea to the jurisdiction. *See Montgomery Cnty. v. Fuqua*, 22 S.W.3d 662, 669 (Tex. App.—Beaumont 2000, pet. denied) ("Affirmative defenses are 'pleas in bar,' and do not provide a justification for summary dismissal on the pleadings.").

Morgan's plea does briefly argue that Hammer lacks standing to assert her claims because she admitted she does not own the Jesse Owens Residence. *See City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607, 616 (Tex. App.—Austin 2016, no pet.) (standing is component of subject-matter jurisdiction). But this argument fails too because Hammer's standing to assert her claims for malicious prosecution, conversion, and intrusion on seclusion do not require that she own or otherwise possess a legally protected interest in the Jesse Owens Residence. *See Rakowski v. Committee to Protect Clear Creek Vill. Homeowners' Rts.*, 252 S.W.3d 673, 679 n.6 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("Without past or present ownership interest in title to land, a party does not have standing to challenge the transfer of the title pertaining to said land.").

We hold that the trial court erred in granting Morgan's plea to the jurisdiction. Accordingly, we sustain Hammer's first issue concerning Morgan.

---

[4] We note that Morgan raised the same affirmative defenses and no-evidence arguments in his summary-judgment motion, so we address these defenses and arguments in our discussion of that motion and address only Morgan's jurisdictional argument here. *See, e.g.*, *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) ("We have stressed that 'courts should acknowledge the substance of the relief sought despite the formal styling of the pleading.'" (quoting *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011))); Tex. R. Civ. P. 71.

20

## II. Motion for summary judgment

We now consider whether the trial court erred in granting Morgan's hybrid motion for summary judgment and dismissing Hammer's claims for conversion, malicious prosecution, and intrusion on seclusion.[5]

### a. No-evidence motion

We consider the no-evidence grounds first.[6] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). Morgan asserted no-evidence arguments on Hammer's claims for conversion and malicious prosecution.

### i. Adequate time for discovery

In challenging the trial court's grant of Morgan's no-evidence motion, Hammer first contends that the trial court ruled on the motion before an adequate time for discovery had passed. *See* Tex. R. Civ. P. 166a(i) (party may file no-evidence motion, but only "[a]fter adequate time for discovery"). We review the trial court's determination that there had been an adequate time for discovery for an abuse of discretion. *McInnis v. Mallia,* 261 S.W.3d 197, 201 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In doing so, we consider all relevant factors, including

- the nature of the case,

- the nature of evidence necessary to controvert the no-evidence motion,

---

[5] On appeal, Hammer does not challenge the trial court's dismissal of her claims against Morgan for abuse of process or fraud on the court, so we do not consider them here. We address her conspiracy claim, which she asserted against all defendants, after our discussion of her claims against each defendant.

[6] These are the same grounds raised in Morgan's plea to the jurisdiction.

21

- the length of time the case was active,

- the amount of time the no-evidence motion was on file,

- whether the movant had requested stricter deadlines for discovery,

- the amount of discovery that had already taken place, and

- whether the discovery deadlines were specific or vague.

*Martinez v. City of San Antonio*, 40 S.W.3d 587, 591 (Tex. App.—San Antonio 2001, pet. denied).

Hammer argues that an adequate time for discovery had not passed for the following reasons:

- when the suit was only a little over three months old, Gottfried filed his TCPA motion to dismiss, which stayed discovery for over four months, *see* Tex. Civ. Prac. & Rem. Code § 27.003(c) (suspending all discovery until court rules on TCPA motion);

- after the stay was lifted, discovery was slowed due to the exigencies of the COVID-19 pandemic;

- the discovery responses she had received by the time Morgan filed his motion were inadequate; and

- the trial court never entered a docket-control order.

We disagree that these facts show that the trial court abused its discretion in determining that there had been an adequate time for discovery. The nature of the evidence necessary to controvert Morgan's no-evidence motion is not complex: Hammer's claims are based largely on Morgan's conduct in the UFCU Suit, which is a matter of public record.

The elements challenged by Morgan in his no-evidence motion involve factual questions whose resolution requires little-to-no discovery or legal questions whose resolution requires no discovery at all. These questions include (1) whether Sutton's exercising dominion and control over Hammer's personal property may be attributed to Morgan (to resolve Morgan's no-evidence challenge to Hammer's conversion claim) and (2) whether the UFCU Suit terminated in Hammer's favor (to resolve Morgan's no-evidence challenge to Hammer's malicious-prosecution claim).

By the time Morgan filed his no-evidence motion, the parties had already engaged in some written discovery, and Hammer fails to explain in meaningful detail why additional discovery was necessary to controvert Hammer's motion. And she cannot complain of the trial court's failure to enter a docket-control order, since she never asked the trial court to do so. *See* Tex. R. App. P. 33.1(a).

We hold the trial court did not abuse its discretion in determining an adequate time for discovery had passed.

### ii. Summary-judgment evidence

Hammer next argues that the trial court erred in granting no-evidence summary judgment on her claims against Morgan because she produced summary-judgment evidence raising a genuine issue of material fact on each challenged element. We consider de novo the evidence pertaining to each challenged element in turn. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). In doing so, we examine the evidence in the light most favorable to Hammer, indulging reasonable inferences and resolving doubts against Morgan. *Id.*

23

### 1. Conversion

To prevail on a claim for conversion of personal property, a plaintiff must prove:

(1)     she owned, had legal possession of, or was entitled to possess the property,

(2)     the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights,

(3)     the plaintiff demanded return of the property, and

(4)     the defendant refused to return the property.

*J.P. Morgan Chase Bank, N.A. v. Texas Cont. Carpet, Inc.*, 302 S.W.3d 515, 536 (Tex. App.—Austin 2009, no pet.).

In his no-evidence motion, Morgan challenges Hammer's evidence on the second element, arguing that there is no evidence he assumed and exercised dominion and control over Hammer's personal property. We agree.

Hammer's conversion claim is based on Sutton's taking possession of her personal property stored inside the Jesse Owens Residence and conveying it to the Hattaways as part of the sale of the house. In support of her claim, Hammer alleges that:

> In his haste to convey the property to the Hattaways and collect his receivership fee, Sutton exercised dominion over Hammer's personal property that was being stored in the Jesse Owens residence, precluded Hammer from retrieving same and ultimately conveyed the property (valued collectively at more than $100,000.00) to the Hattaways as part of the sale of the Jesse Owens property.

Hammer makes no allegation that Morgan ever assumed and exercised control over her personal property. Instead, her allegations concern Sutton alone. But Sutton never acted on behalf of Morgan. Instead, as the court-appointed receiver, Sutton acted on behalf of

24

the trial court. *See Rich v. Cantilo & Bennett, L.L.P.*, 492 S.W.3d 755, 760–61 (Tex. App.—Austin 2016, pet. denied) ("Under receivership law generally, a receiver is an officer of the court, the medium through which the court acts.") (cleaned up). Sutton's actions cannot be attributed to Morgan and therefore cannot serve as the basis of Hammer's conversion claim against Morgan.

We hold that Hammer failed to produce summary-judgment evidence raising a genuine issue of material fact that Morgan assumed and exercised dominion and control over her personal property.

### 2. Malicious prosecution

To prevail on a claim for malicious prosecution, the plaintiff must prove:

(1)     the institution or continuation of civil proceedings against the plaintiff,

(2)     by or at the insistence of the defendant,

(3)     malice in the commencement of the proceeding,

(4)     lack of probable cause for the proceeding,

(5)     termination of the proceeding in the plaintiff's favor, and

(6)     special damages.

*Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).

In his no-evidence motion, Morgan challenges Hammer's evidence on the fifth element, arguing that there is no evidence of an underlying civil proceeding that terminated in Hammer's favor. We disagree.

In her live pleading and response to Morgan's no-evidence motion, Hammer asserted that:

25

- Morgan instituted civil proceedings by filing his motion for sanctions and his motion for the appointment of a turnover receiver in the UFCU Suit, even though he wasn't even a party to that suit;

- Morgan continued the proceedings in part by filing his motion for judgment nunc pro tunc in contravention of our memorandum opinion, the reasoning and holding of which Morgan failed to apprise the trial court; and

- the proceedings terminated in Hammer's favor when the Morgan Judgment, Turnover Order, and Distribution Order were vacated by the trial court and the time to appeal expired.

Hammer's assertions are undisputed and established conclusively by relevant motions, orders, and opinions. It is undisputed that Morgan instituted the turnover receivership in the UFCU Suit after the trial court's plenary jurisdiction had expired. It is undisputed that Morgan continued the receivership even after we held that the UFCU Judgment had operated as the final judgment in the UFCU Suit. And it is undisputed that receivership terminated in Hammer's favor.

On appeal, Morgan contends that the civil proceeding forming the basis of Hammer's malicious-prosecution claim is the UFCU Suit in its entirety rather than the turnover receivership that occurred under the suit's style and cause number. And the UFCU Suit, Morgan argues, did not terminate in Hammer's favor because her claims were dismissed with prejudice and she received none of the affirmative relief for which she brought the suit in the first place.

We reject Morgan's characterization of the UFCU Suit as the civil proceeding forming the basis of Hammer's claim. In the UFCU Suit, Hammer never asserted any claims against Morgan in his personal capacity, Hammer never served Morgan with citation, and Morgan was not otherwise named as an individual defendant. Although all relevant proceedings occurred under the style and cause number of the UFCU Suit, the proceedings on Hammer's claims against UFCU and El Campo are, for present purposes, distinguishable from the

26

proceedings on Morgan's motions for sanctions and turnover relief—particularly in light of the fact that Morgan was not even an individual defendant in the UFCU Suit.

We hold that Hammer met her burden to produce summary-judgment evidence raising a genuine issue of material fact as to whether Morgan instituted or continued a civil proceeding that terminated in Hammer's favor.

### b. Traditional motion

We now consider Morgan's traditional grounds for summary judgment on Hammer's claims for malicious prosecution and intrusion on seclusion, the latter of which Morgan did not challenge in his no-evidence motion.

### i. Malicious prosecution

In his traditional motion, Morgan argued that Hammer's malicious-prosecution claim is barred by res judicata, judicial estoppel, and limitations. We consider each affirmative defense in turn.

### 1. Res judicata

Res judicata (or claim preclusion) bars claims that have already been fully adjudicated in a prior suit or that, with the use of diligence, could have been brought in the prior suit. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022). Res judicata is an affirmative defense. Tex. R. Civ. P. 94. It requires proof of three elements:

(1)      a prior final judgment on the merits by a court of competent jurisdiction,

(2)      identity of parties or those in privity with them, and

(3)      a second action based on the same claims that were raised or could have been raised in the first action.

*Martin*, 645 S.W.3d at 225.

Morgan contends that res judicata bars Hammer's claim for malicious prosecution. Specifically, Morgan contends that Hammer's claim is precluded by the trial court's December 18, 2018 order that vacated the Morgan Judgment, Turnover Order, and Distribution Order (the Vacatur Order). Morgan characterizes the Vacatur Order as a final judgment and contends that Hammer could have—and therefore should have—asserted her malicious-prosecution claim during the turnover receivership proceedings. We disagree.

The turnover receivership began after the trial court's plenary jurisdiction had expired. Any adjudication of Hammer's malicious-prosecution claim during the receivership proceeding therefore would have bene void. Because the trial court would have lacked jurisdiction over the claim if it had been raised in the receivership proceeding, that claim cannot be precluded by the trial court's prior final judgment in that proceeding. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017) (holding that parties cannot escape binding effect of court's final decision "on an issue over which it has jurisdiction").

Although the trial court possessed limited jurisdiction to conclude the receivership and vacate the orders after we conditionally granted mandamus relief, *see In re Raggio-2204 Jesse Owens*, 2018 WL 3384692, at *3 n.7 (noting that when appellate court vacates receivership, trial court still has jurisdiction "to conduct the necessary proceedings to conclude the receivership"), it lacked jurisdiction to adjudicate any other claim, including Hammer's claim for malicious prosecution. Because Hammer could not have brought her claim during the receivership proceeding, the claim is not precluded by the trial court's Vacatur Order.

We hold that Morgan failed to meet his burden to prove that Hammer's claim for malicious prosecution is barred by res judicata.

## 2. Judicial estoppel

Judicial estoppel is an affirmative defense that prevents a party from assuming inconsistent positions in litigation. Tex. R. Civ. P. 94; *Fleming v. Wilson*, 694 S.W.3d 186, 191 (Tex. 2024).

In his traditional motion, Morgan argued that Hammer is judicially estopped from asserting claims predicated on her or Raggio's having owned the Jesse Owens Residence at the time the property was sold because Hammer judicially admitted that neither she nor Raggio owned the property, but rather Gregory did at that time. But Hammer's malicious-prosecution claim isn't predicated on her or Raggio's having owned the Jesse Owens Residence at any particular time—or ever. The issue of the property's ownership is irrelevant to her claim, which focuses instead on whether Morgan acted maliciously and without probable cause when he continued the turnover receivership proceedings by filing a motion for judgment nunc pro tunc to remove the finality language from the UFCU Judgment despite our prior holding the UFCU Judgment operated as the final judgment in that case.

We hold that Morgan failed to meet his burden to prove that Hammer is judicially estopped from asserting her malicious-prosecution claim.

## 3. Limitations

A claim's statute of limitations is an affirmative defense that prevents a plaintiff from filing a claim after the claim's limitations period has run. Tex. R. Civ. P. 94. A claim for malicious prosecution is governed by a one-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.002(a). Therefore, to avoid limitations, Hammer had to file her claim within one-year of the claim's accrual. A claim for malicious prosecution accrues when the underlying civil

29

proceeding terminates in the plaintiff's favor, which occurs once the appeals process has been exhausted.  *Texas Beef Cattle Co.*, 921 S.W.2d at 208.

Here, the trial court vacated the Morgan Judgment, Turnover Order, and Distribution Order and concluded on the turnover receivership on December 18, 2018.  Morgan did not appeal the trial court's orders, so the appeal process ended on January 17, 2019.  *See* Tex. R. App. P. 26.1 (notice of appeal must be filed within 30 days after judgment is signed).  Hammer filed her malicious-prosecution claim a little less than six months later, on July 11, 2019, well within a year of the claim's accrual.  Therefore, Hammer filed her claim within the limitations period.  Accordingly, we hold that Morgan failed to meet his burden to prove that Hammer's claim for malicious prosecution is barred by limitations.

### ii.  Intrusion on seclusion

Finally, we consider the trial court's dismissal of Hammer's claim for intrusion on seclusion, which is predicated on Morgan's opening her mail and sharing her private banking information with Gottfried.  *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (intrusion on seclusion is "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person.").  In his traditional motion, Morgan argued that Hammer's claim is barred by res judicata and judicial estoppel.  We consider each affirmative defense in turn.

### 1.  Res judicata

Morgan contends that res judicata bars Hammer's claim for intrusion on seclusion for the same reason he contends res judicata bars Hammer's claim for malicious prosecution: because the Vacatur Order operates as a prior final judgment and Hammer could have—and

therefore should have—brought her claim during the receivership proceeding. And for the same reason we rejected Morgan's res judicata argument for Hammer's malicious-prosecution claim, we reject Morgan's argument for Hammer's intrusion-on-seclusion claim: because the trial court lacked subject-matter jurisdiction over the receivership proceeding, Hammer could not have brought her claim during those proceedings, and, as a result, the claim is not precluded by the Vacatur Order. *See Engelman*, 514 S.W.3d at 750.

We hold that Morgan failed to meet his burden to prove that Hammer's claim for intrusion on seclusion is barred by res judicata.

## 2. Judicial estoppel

As discussed above, Morgan argues that Hammer is judicially estopped from asserting claims predicated on her or Raggio's having owned the Jesse Owens Residence at the time the property was sold. As with her malicious-prosecution claim, Hammer's intrusion-on-seclusion claim is not predicated on her or Raggio's having ever owned the Jesse Owens Residence. Instead, this claim is predicated on Morgan's invading her privacy by opening and reading her private mail without her permission. Whether Hammer or Raggio ever owned the Jesse Owens Residence is irrelevant to the merits of this claim.

Accordingly, we hold that Morgan failed to meet his burden to prove that Hammer is judicially estopped from asserting her intrusion-on-seclusion claim. We sustain the parts of Hammer's second issue that challenge the trial court's dismissal of Hammer's claims for malicious prosecution and intrusion on seclusion. We otherwise overrule Hammer's second issue concerning Morgan.

31

### III. Attorney's fees

We end our discussion of Hammer's issues concerning Morgan by considering her attorney's fee complaint. Hammer argues that the trial court erred in awarding Morgan attorney's fees against her because there was no legal basis for doing so.

Morgan responds that Hammer did not preserve her attorney's fee complaint for review. We disagree.

Morgan never filed a motion requesting that he recover attorney's fees from Hammer. Instead, after the trial court granted his dispositive motions, Morgan emailed a proposed order to the trial court that included a provision awarding himself attorney's fees against Hammer. In response, Hammer filed a written objection, specifically objecting that "there is no valid legal basis on which to impose an award of attorney's fees or sanctions upon Stacey Hammer individually." *See* Tex. R. App. P. 33.1(a). Three weeks later, without holding a hearing, the trial court signed Morgan's proposed order and thereby implicitly overruled Hammer's objection. *See In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003) (trial court's implicit denial of an issue preserves it for appellate review). Because Hammer filed a timely written objection that there is no valid legal basis for awarding Morgan attorney's fees, she preserved the issue for our review. *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (per curiam) (appellate courts should "hesitate to turn away claims based on waiver or failure to preserve the issue," especially when "the party has clearly and timely registered its objection").

Turning to the merits, we hold that the trial court erred in awarding Morgan attorney's fees against Hammer. Texas law follows "the American Rule": It does not allow "recovery of attorney's fees unless authorized by statute or contract." *Tony Gullo Motors I, L.P.*

*v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). But Morgan does not contend there exists any contract or statute authorizing the trial court to award him his attorney's fees against Hammer.

The trial court's order awards Morgan attorney's fees against Hammer and Raggio, jointly and severally. Because the trial court granted Morgan's TCPA motion to dismiss Raggio's claims, there was a legal basis for the trial court to award Morgan fees against Raggio. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) (requiring trial court to award movant reasonable attorney's fees if court orders dismissal of legal action). But the trial court didn't grant Morgan's TCPA motion to dismiss Hammer's claims. Instead, it granted Morgan's motion for summary judgment, which neither requested an award of attorney's fees nor provided the trial court with any legal basis for awarding them.

While there is a legal basis for the trial court's award of fees against Raggio, there is no legal basis for the trial court to hold Hammer and Raggio jointly and severally liable. At the hearing on fees and sanctions, Morgan's counsel, in arguing why he was unable to segregate work on Hammer's suit from work on Raggio's suit, testified that, in his opinion, Hammer and Raggio had "acted as alter egos of each other." However, Morgan's counsel did not present evidence to support such a finding. Nor did he cite any authority or make any substantive argument to support such a finding. The other defendant-appellees, at various points throughout the litigation, have generally alleged that Raggio is Hammer's alter ego. But like Morgan, none of them have presented evidence, cited authority, or made substantive arguments to support such a finding.

Under Texas law, the use of the limited-liability-company form ordinarily insulates members from personal liability for the company's obligations, and a trial court will not pierce the veil on an alter-ego basis except "in limited circumstances." *Plan B Holdings, LLC*

33

*v. RSLLP*, 681 S.W.3d 443, 458 (Tex. App.—Austin 2023, no pet.). Alter-ego liability can be imposed only when there is such unity between the company and member that the separateness of the company has ceased and holding only the company liable would result in injustice. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). The company and member are presumptively separate, and the burden to overcome the presumption rests on the party seeking to pierce the veil. *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 524 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). The trial court never found that Raggio is Hammer's alter ego, and neither Morgan nor any other defendant-appellee presented evidence to support such an implied finding. Because alter-ego liability is the only possible basis for holding Hammer and Raggio jointly and severally liable, and because the defendant-appellees presented no evidence to support such a finding, we hold there was no basis for the trial court to hold Hammer jointly and severally liable for the fees awarded against Raggio.

Because there is no legal basis for Morgan to have recovered his attorney's fees from Hammer, we hold that the trial court erred in awarding them. Accordingly, we sustain Hammer's third issue concerning Morgan.

### HAMMER V. GOTTFRIED

On appeal, Hammer raises four issues concerning Gottfried. First, Hammer contends that the trial court erred in granting Gottfried's TCPA motion to dismiss her claims. Second, Hammer contends that the trial court erred in awarding Gottfried additional attorney's fees against her based on its later grant of Gottfried's TCPA motion to dismiss Raggio's claims. Third, Hammer contends that the trial court erred in awarding Gottfried additional sanctions against her for the same reason it erred in awarding him additional fees. Fourth, Hammer

34

contends that the trial court erred in inadvertently dismissing her intrusion-on-seclusion claim, which Gottfried's TCPA motion did not address because the motion was filed before Hammer asserted the claim.

## I. TCPA motion to dismiss

We begin with Gottfried's TCPA motion.

### a. Applicable law and standard of review

The TCPA provides an expedited procedure for dismissing certain legal actions that infringe on the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code §§ 27.001(2)-(4), 27.003. Hammer filed suit in July 2019, so Gottfried's motion is governed by the version of the statute in effect at that time. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019). Under that version, if a legal action "is based on, relates to, or is in response to" a defendant's exercise of a protected right, the defendant may file a motion to dismiss the action. Tex. Civ. Prac. & Rem. Code § 27.005(b). The motion is then reviewed under a three-step, burden-shifting framework. *Id.* § 27.005(b)-(d).

The defendant has the initial burden to show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to" the defendant's exercise of a protected right. *Id.* § 27.005(b). If the defendant meets his initial burden, the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the plaintiff establishes a prima facie case, the

burden shifts back to the defendant to establish "by a preponderance of the evidence each essential element of a valid defense to the [plaintiff]'s claim." *Id.* § 27.005(d).

We review de novo whether each party met its respective burden. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.).

### b. Application

Our first step is to consider de novo whether Gottfried met his initial burden to establish by a preponderance of the evidence that Hammer's legal action is based on, relates to, or is in response to Gottfried's exercise of the right to petition. Tex. Civ. Prac. & Rem. Code § 27.005(b)(2); *Serafine*, 466 S.W.3d at 357.

Under the TCPA, the "exercise of the right to petition" is broadly defined to include (among other things) "a communication in or pertaining to . . . a judicial proceeding . . . ." Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i). A "communication" is in turn broadly defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Thus, the TCPA applies if Hammer's legal action is based on, relates to, or is in response to Gottfried's making or submitting a statement or document in or pertaining to a judicial proceeding.

Hammer asserted two claims against Gottfried: (1) malicious prosecution and (2) conversion.[7] In support of these claims, Hammer alleges that Gottfried

- filed a motion for sanctions against Hammer on behalf of Morgan in the UFCU Suit,

---

[7] Hammer also asserted claims against Gottfried for abuse of process and fraud on the court. But she does not challenge the trial court's dismissal of these claims, so we do not consider them here. We address her conspiracy claim against all defendants at the end of the section discussion Hammer's issues.

36

- in support of the motion, falsely claimed that Hammer had in bad faith delayed and interfered with the sale of the Costa Bella Residence by filing multiple lis pendens that clouded title to the property,

- sent notice of the hearing to Hammer's post-office box instead of her email address,

- filed an ex parte motion to appoint a turnover receiver to assist Morgan in collecting on the sanctions award,

- in support of the motion, falsely claimed that Hammer was the sole member of Raggio, that Raggio had forfeited its existence, and that Hammer effectively owned the Jesse Owens Residence in her personal capacity, and

- filed a motion for judgment nunc pro tunc in an attempt to disregard the finality language in the UFCU Judgment.

*See id.* § 27.006(a) (in reviewing TCPA motion, court "shall consider the pleadings").

In sum, Hammer's claims against Gottfried are based on the motions he filed and the statements and arguments he made in the UFCU Suit. Thus, Hammer's claims are based on communications (filing motions and making statements and arguments) in a judicial proceeding (the UFCU Suit). We hold that Gottfried met his initial burden to establish by a preponderance of the evidence that Hammer's legal action is based on, relates to, or is in response to his exercise of the right to petition. *See Youngkin v. Hines*, 546 S.W.3d 675, 680–81 (Tex. 2018) (attorney speaking on behalf of client in courtroom qualifies as "exercise of the right to petition" under TCPA).

### c. Affirmative defense

Because the third step is dispositive, we assume without deciding that Hammer established a prima facie case for her claims and consider de novo whether Gottfried established by a preponderance of the evidence an affirmative defense to Hammer's claims. Tex. Civ. Prac.

37

& Rem. Code § 27.005(c), (d); *Serafine*, 466 S.W.3d at 357. Gottfried argues he is entitled to dismissal because he established the affirmative defense of attorney immunity. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) ("Attorney immunity is an affirmative defense."). We agree.

Under Texas law, "an attorney is immune from liability to nonclients for conduct within the scope of his representation of his clients." *Youngkin*, 546 S.W.3d at 681. "Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer." *Id.* This inquiry "focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct." *Id.*

Thus, to determine whether the defense applies here, "we must look beyond [Hammer]'s characterizations of [Gottfried's] activity as fraudulent and conspiratorial and focus on the conduct at issue." *Id.* at 682. That conduct consists of

- filing and arguing a motion for sanctions,

- sending notice of the hearing to Hammer's P.O. box,

- filing and arguing a motion for the appointment of a turnover receiver, and

- filing and arguing a motion for judgment nunc pro tunc.

On this record, Gottfried's conduct of filing and arguing motions falls within the scope of his representation of Morgan. *Id.* ("filing lawsuits and pleadings" qualify as conduct within scope of lawyer's representation).

Finally, Hammer argues that, regardless of the merits, Gottfried waived the defense because he never pleaded it in his answer. *See Willacy Cnty. Appraisal Dist.*

38

*v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018) ("Generally, an affirmative defense is waived if not raised in a defendant's responsive pleading."). But Hammer never objected to Gottfried's failure to plead attorney immunity and instead responded to his argument on the merits. The issue, therefore, was tried by consent. *See* Tex. R. Civ. P. 67; *cf. Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 537 (Tex. 2019) (plaintiff could not complain for first time on appeal that defendant failed to plead an affirmative defense when defendant relied on defense in its summary judgment motion without objection by plaintiff); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991) (unpleaded affirmative defense may serve as basis for summary judgment when it is raised in motion, and opposing party does not object to lack of rule 94 pleading).

We hold that Gottfried has met his burden to establish by a preponderance of the evidence an affirmative defense to Hammer's claims. Accordingly, we hold that Gottfried has met his ultimate burden to show he is entitled to dismissal of Hammer's claims under the TCPA. We overrule Hammer's first issue concerning Gottfried.

## II. Attorney's fees and sanctions

We now consider Hammer's second and third issues concerning Gottfried, in which she contends that the trial court erred in awarding Gottfried additional attorney's fees and sanctions based on its grant of Gottfried's TCPA motion against Raggio (rather than its earlier grant of Gottfried's TCPA motion against her). For context, we summarize the relevant procedural history.

In October 2019, Gottfried filed his TCPA motion against Hammer in the Hammer Suit. In March 2020, the trial court signed an order that granted the motion, dismissed

Hammer's claims against Gottfried with prejudice, and awarded Gottfried $2,000.00 in attorney's fees and $100.00 in sanctions against Hammer (Gottfried's First Award). Gottfried filed a motion to reconsider and increase the award of fees and sanctions, which the trial court denied in October 2020. Gottfried did not file any further motions in the Hammer Suit.

In January 2021, Gottfried filed his TCPA motion against Raggio in the Raggio Suit. The next month, the Raggio Suit and the Hammer Suit were consolidated. The month after that, the trial court granted Gottfried's TCPA motion against Raggio and dismissed Raggio's claims against Gottfried with prejudice while deferring its determination of fees and sanctions. A little over a year later, in March 2022, the trial court held a hearing on fees and sanctions. And a little over a year after that, in April 2023, the trial court signed an order that awarded Gottfried $22,972.50 in attorney's fees and $100,000.00 in sanctions against Raggio and Hammer, jointly and severally (Gottfried's Second Award).

Hammer contends that the trial court erred in awarding fees and sanctions against her in Gottfried's Second Award. We agree.

Gottfried's Second Award is based on the trial court's grant of Gottfried's TCPA motion against Raggio. In his TCPA motion against Raggio, Gottfried requested an award of fees and sanctions against Raggio. But he did not request an award of fees and sanctions against Hammer or otherwise provide a legal basis for obtaining one. Consistent with Gottfried's request, the TCPA authorizes a trial court to award the movant sanctions "against the party who brought the legal action," Tex. Civ. Prac. & Rem. Code § 27.009(a)(2), which in this case would be Raggio, not Hammer. And, as previously discussed, while there is a basis for the trial court to have awarded fees and sanctions against Raggio, there is no basis for the trial court to have held Hammer and Raggio jointly and severally liable: Although Gottfried generally alleged that

40

Raggio is Hammer's alter ego, he did not present evidence, cite authority, or make substantive arguments to support such a finding. Nor did he otherwise present evidence or argument to support a finding of joint and several liability.

We hold that the trial court erred in awarding attorney's fees and sanctions against Hammer in Gottfried's Second Award. Accordingly, we sustain Hammer's second and third issues concerning Gottfried.

## III. Dismissal of intrusion-on-seclusion claim

Finally, we consider whether the trial court erred by inadvertently dismissing Hammer's claim against Gottfried for intrusion on seclusion. The relevant procedural history is as follows:

- Gottfried filed his TCPA motion to dismiss the claims asserted in Hammer's original petition.

- The trial court then granted Gottfried's motion, dismissed Hammer's claims, and awarded Gottfried fees and sanctions.

- Hammer then filed her amended petition, adding her claim for intrusion on seclusion.

- Thereafter, Gottfried never sought dismissal of Hammer's intrusion claim.

- Nevertheless, when the trial court signed its final orders, it ordered that Hammer "take nothing" on her claims against Gottfried.

Hammer argues that the trial court erred in ordering that she "take nothing" on her claims against Gottfried because the order inadvertently dismissed her intrusion claim. We agree.

41

The Texas Supreme Court has explained that "an amended or supplemental pleading that asserts a new claim involving different elements than a previously asserted claim also asserts a new legal action that triggers a new sixty-day period for filing a motion to dismiss that new claim" under the TCPA. *Montelongo v. Abrea*, 622 S.W.3d 290, 301 (Tex. 2021); *see* Tex. Civ. Prac. & Rem. Code § 27.003(b) (providing 60-day deadline for filing TCPA motion); *Soo v. Pletta*, No. 05-20-00876-CV, 2022 WL 131045, at *6–7 (Tex. App.—Dallas Jan. 14, 2022, no pet.) (mem. op.) (TCPA motion did not apply to new claim filed after motion).

Hammer's intrusion claim is a new claim involving different elements from the elements of the claims asserted in her original petition. Therefore, Gottfried's TCPA motion cannot be construed as seeking to dismiss that claim. Because Gottfried did not otherwise seek dismissal of Hammer's intrusion claim, we hold the trial court erred in ordering that she "take nothing" on the claim. Accordingly, we sustain Hammer's third issue concerning Gottfried.

## HAMMER V. SUTTON

On appeal, Hammer raises two issues concerning Sutton. First, Hammer contends that the trial court erred in granting Sutton's hybrid motion for summary judgment. Second, Hammer contends that the trial court erred in inadvertently dismissing her intrusion-on-seclusion claim, which Sutton's motion did not address because it was filed before Hammer asserted the claim.

## I. Motion for summary judgment

We begin by considering de novo whether the trial court erred in granting Sutton's hybrid motion for summary judgment. *Fleming*, 694 S.W.3d at 190 (standard of review for traditional motion); *Helena Chem. Co.*, 664 S.W.3d at 72 (standard of review for no-evidence

42

motion). Although we normally consider no-evidence grounds first, *Parker*, 514 S.W.3d at 219, because one of Sutton's traditional grounds is dispositive, we begin with that ground, *see* Tex. R. App. P. 47.1, specifically, the affirmative defense of derived judicial immunity, *Dallas Cnty. v. Halsey*, 87 S.W.3d 552, 553 (Tex. 2002) (derived judicial immunity is affirmative defense).

Hammer complains at the outset that Sutton failed to properly raise the defense in the trial court because he included it in his no-evidence motion and not in his traditional motion. Although Sutton raised the defense in his no-evidence motion, his argument was, in substance, one for traditional summary judgment. Therefore, we will construe this part of his no-evidence motion as a traditional motion, *Collins v. Texas Bd. of Law Exam'rs*, No. 03-22-00020-CV, 2023 WL 4277366, at *2 (Tex. App.—Austin June 30, 2023, no pet.) (mem. op.) (construing no-evidence motion as traditional motion when substantive arguments "were not directed towards a purported lack of evidence"), and we will consider de novo whether Sutton proved every essential element of the defense as a matter of law, Tex. R. Civ. P. 166a(c); *Fleming*, 694 S.W.3d at 190 ("On a traditional motion for summary judgment, the movant . . . must conclusively prove every essential element of his . . . defense as a matter of law.").

### a. Applicable law

Under Texas law, a court-appointed receiver is immune from liability for acts performed within the scope of his delegated authority. *Rehabworks, LLC v. Flanagan*, No. 03-07-00552-CV, 2009 WL 483207, at *2 (Tex. App.—Austin Feb. 26, 2009, pet. denied) (mem. op.) ("[A] court-appointed receiver acts as an arm of the court and is immune from liability for actions grounded in his conduct as receiver."); *Clarke as Next Friend of B.D.C. v. Wolf*, 717 S.W.3d 918, 924 (Tex. App.—Houston [14th Dist.] 2025, no pet.) ("Those clothed

with authority to perform judicially appointed or delegated duties, including court-appointed receivers, are entitled to derived judicial immunity if they actually function as an arm of the court."); *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 366 (Tex. App.—El Paso 2022, no pet.) ("Certain court-appointees, including court-appointed receivers who act as agents of the court, are generally entitled to quasi-judicial immunity (also known as derived judicial immunity) for actions taken in the course and scope of performing their duties.").

This immunity is known as derived judicial immunity because it derives from the immunity attached to the judge. *Halsey*, 87 S.W.3d at 554 (explaining that "when a judge delegates or appoints another person to perform services for the court . . . the immunity attaching to the judge follows the delegation [or] appointment"). It is an affirmative defense. *Id.* at 553. To prove it, the receiver must show that:

(1)     the judge delegated him the authority to act as a receiver,

(2)     the plaintiff sued him for performing acts as a receiver, and

(3)     the acts for which he was sued were in the scope of his delegated authority.

*See id.* at 554.

### b. Analysis

Here, Sutton met his burden to prove each element of the affirmative defense of derived judicial immunity. First, the trial court delegated Sutton authority to act as receiver. In its Turnover Order, the trial court appointed Sutton as turnover receiver and authorized him to take possession of the Jesse Owens Residence, sell it, and apply the proceeds toward payment of the Morgan Judgment. *See Miller v. Diaz*, No. 05-21-00658-CV, 2022 WL 109363, at *5 (Tex.

App.—Dallas Jan. 12, 2022, no pet.) (mem. op.) ("'Jurisdiction' in the context of judicial immunity does not concern whether an order is valid or void.").

Second, Hammer sued Sutton for performing acts as a receiver. Hammer bases her claims against Sutton on two principal acts: (1) Sutton's allegedly "misstating the law" in arguing that the trial court could and should order the sale of the Jesse Owens Residence to satisfy the Morgan Judgment and (2) Sutton's amending the contract for the sale of the house to provide that all personal property stored inside would "convey with the property." Sutton made the legal arguments and amended the contract in his capacity as receiver.

Third, Sutton's acts were in the scope of his authority as receiver. The Turnover Order authorized Sutton to take the steps necessary to sell the house, and both his legal arguments for why the trial court could and should order the sale of the house as well as his amendment to the contract were part of Sutton's efforts to sell the house.

Importantly, and contrary to Hammer's characterization, in arguing for the sale of the house, Sutton did not misstate any material facts. Sutton was upfront with the trial court that Raggio (and not Hammer) held title to the Jesse Owens Residence. Sutton argued, based on the records publicly available at that time, that Hammer (and not Gregory) owned Raggio. And when Hammer argued that a charging order was the only way to satisfy the Morgan Judgment out of any interest she had in Raggio, *see* Tex. Bus. Orgs. Code § 101.112 (providing that judgment creditor of member of LLC may charge member's interest in LLC to satisfy judgment), Sutton responded with a colorable argument, based on caselaw, that a charging order is unnecessary when the judgment debtor is the sole member of the LLC, and the LLC isn't an operating business but rather a mere vehicle for the judgment debtor's ownership of a particular asset, *see Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840, at *8 (Tex. App.—Fort

45

Worth Nov. 9, 2017, no pet.) (mem. op.) (upholding turnover order directing ex-husband to turn over to ex-wife assets he placed in non-operating LLC and partnership in which he was sole member and partner, as there would be no disruption to operating business or detriment to other individuals) (citing Michael C. Riddle, JD, T. Christine Butts, JD, Karen K. Akiens, JD, LLM, MBA, *Choice of Business Entity in Texas*, 4 Hous. Bus. & Tax L.J. 292, 318 (2004)) ("[T]he charging order developed as a way to prevent the creditor of one partner from holding up the business of the entire partnership and causing injustice to the other partners.").

Hammer argues that Sutton lacked the authority to amend the contract to convey her personal property, even if necessary to close the sale of the house, because the Turnover Order "does not compel" the turnover of Hammer's exempt property. But the amendment didn't compel the turnover of Hammer's personal property—instead, it facilitated the sale of the house. When Sutton took possession of the Jesse Owens Residence, Hammer's personal property was already there. The trial court then ordered Sutton to allow Hammer's associate Ramey to remove Hammer's personal property in the presence of a constable; Sutton complied with the order and arranged for two constables to come to the house so Ramey could remove Hammer's property; but when Ramey arrived at the scheduled time, he did not remove the property. In amending the contract, Sutton didn't compel the turnover of Hammer's personal property; he exercised his discretion to ensure that the property Hammer had refused to remove did not prevent the sale from closing.

Hammer further argues that, even if Sutton acted within the scope of his delegated authority, he still is not immune from liability because the trial court lacked jurisdiction to delegate the authority in the first place because it had lost plenary power. And because the trial

46

court lacked jurisdiction to delegate the authority, Hammer argues, the trial court's immunity does not follow the delegation. We disagree.

While it is true that a judge is not immune for acts "performed in the clear absence of all jurisdiction[,]" *James v. Underwood*, 438 S.W.3d 704, 709 (Tex. App.—Houston [1st Dist.] 2014, no pet.), for immunity purposes, "[t]he term 'jurisdiction' has a connotation . . . that is entirely different from its usual meaning[,]" *Bradt v. West*, 892 S.W.2d 56, 67 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

The question isn't whether the trial court "actually had jurisdiction" to enter the Turnover Order. *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *see also Miller v. Diaz*, No. 05-21-00658-CV, 2022 WL 109363, at *5 (Tex. App.—Dallas Jan. 12, 2022, no pet.) (mem. op.) ("'Jurisdiction' in the context of judicial immunity does not concern whether an order is valid or void."). Rather, the question is whether the entry of turnover orders is the type of thing the trial court normally has jurisdiction to do. *See Miller*, 2022 WL 109363, at *5 (question is "whether the judge ordinarily has jurisdiction to sign an order of the type that was signed"); *James*, 438 S.W.3d at 712 (question is whether judge "had jurisdiction to conduct proceedings of the sort that are the basis of [the plaintiff]'s complaint"). The answer to that question is yes.

We hold that Sutton met his burden to prove he is entitled to derived judicial immunity as a matter of law. *See Wolf*, 717 S.W.3d at 925–26 (receiver appointed to liquidate assets of limited liability company was entitled to derived judicial immunity when plaintiff's allegations could not be construed to extend to actions taken outside receiver's authority, including that receiver made unilateral decision to terminate key employees integral to LLC's operations and success and engaged in reckless depletion and squandering of LLC's assets); *Ramirez v. Burnside & Rishebarger, L.L.C.*, No. 04-04-00160-CV, 2005 WL 1812595, at *1

47

(Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op.) (holding receiver accused of having falsely represented condition of house purchased from receivership estate was entitled to derived judicial immunity when "[t]he receiver's role in selling the property was to assist the receivership court in performing its duties" and "the trial court granted the receiver very broad discretion in exercising its duties"). Accordingly, we overrule Hammer's first issue concerning Sutton.

## II. Dismissal of intrusion-on-seclusion claim

We now consider whether the trial court erred by inadvertently dismissing Hammer's claim against Sutton for intrusion on seclusion. The relevant procedural history is as follows:

- Sutton filed his hybrid summary-judgment motion on the claims asserted in Hammer's original petition.

- Three weeks before the trial court heard Sutton's motion, Hammer filed her amended petition, adding her claim for intrusion on seclusion.

- Sutton did not amend or supplement his motion to address Hammer's new claim.

- Nevertheless, when the trial court heard and granted Sutton's motion, it ordered that "all of Plaintiff Stacey Hammer's claims against Defendant J. Patrick Sutton be dismissed with prejudice," including her claim for intrusion on seclusion.

Hammer argues that the trial court erred in dismissing "all of" her claims because Sutton did not move for summary judgment on her intrusion-on-seclusion claim and the order therefore grants more relief than requested. *See Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("The portion of a final

48

summary judgment rendered on the plaintiff's entire case under these circumstances must generally be reversed because the judgment grants more relief than requested."). We agree.

A properly amended petition supersedes and replaces the prior petition. Tex. R. Civ. P. 65. Thus, if a plaintiff properly amends her petition after a defendant moves for summary judgment, the defendant is generally not entitled to summary judgment on the plaintiff's entire case, unless he amends or supplements his motion to address the new claims asserted in the amended petition. *Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2009, no pet.). However, an amended or supplemental motion is unnecessary if:

(1)     the amended petition essentially reiterates previously pleaded causes of action,

(2)     a ground asserted in the motion conclusively negates a common element of the newly and previously pleaded claims, or

(3)     the original motion is broad enough to encompass the newly asserted claims.

*Id.* at 779 n.1.

Here, Hammer's first amended petition is a properly amended petition since it was filed more than seven days before the trial court heard Sutton's summary-judgment motion on submission. *See* Tex. R. Civ. P. 63 (party may normally amend petition without leave of court if amended petition is filed more than seven days before "date of trial"); *Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex. 1988) (summary-judgment hearing is "trial" within meaning of Rule 63).

Hammer's intrusion-on-seclusion claim does not reiterate a previously pleaded cause of action. Her intrusion claim arises from the invasion of her privacy through the

49

unauthorized opening of her mail and the sharing of its contents, while her other claims arise mainly from the conversion of her personal property through the turnover receivership.

Hammer's intrusion claim does not share an element with any of her other claims, *see Valenzuela*, 853 S.W.2d at 513 (intrusion on seclusion is "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person"), so no ground in Sutton's motion can be said to negate a common element of Hammer's intrusion claim and her previously pleaded claims.

Sutton's motion is not otherwise broad enough to encompass Hammer's intrusion claim. Sutton asserted the affirmative defense of derived judicial immunity. But the unauthorized opening and sharing of Hammer's mail cannot be reasonably construed as falling within the scope of Sutton's delegated authority. Sutton also asserted the affirmative defense of res judicata based on a federal district court's dismissal of claims against him on judicial-immunity grounds. But none of the claims included an intrusion claim, which could not have been raised in that case since Hammer had not yet discovered the alleged invasion of her privacy.

Because Hammer properly amended her petition to add her intrusion claim and Sutton failed to amend or supplement his motion to address it, we hold the trial court erred in granting summary judgment on the claim. Accordingly, we sustain Hammer's second issue concerning Sutton.

## HAMMER'S CONSPIRACY CLAIM

We end our discussion of Hammer's issues by briefly addressing her claims for civil conspiracy. Civil conspiracy is not a standalone tort. Rather, it is a derivative tort that

50

depends on the legal viability of an underlying tort. *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 140–42 (Tex. 2019). Thus, to the extent Hammer's conspiracy claims are based on her underlying claims for intrusion on seclusion and malicious prosecution, we reverse the trial court's dismissal of the claims. And to the extent Hammer's conspiracy claims are based on her underlying claim for conversion, we affirm the trial court's dismissal of the claims, since Hammer's claim for conversion isn't viable against anyone.

We now turn to Raggio. We have also grouped Raggio's issues by defendant. We consider Raggio's issues against Morgan, then Gottfried, then Sutton, and finally, the Real Estate Parties.

## RAGGIO V. MORGAN

On appeal, Raggio raises six issues concerning Morgan. First, Raggio contends that the trial court erred in granting Morgan's plea to the jurisdiction. Second, Raggio contends that the trial court erred in granting Morgan's TCPA motion to dismiss. Third, Raggio contends that the trial court erred in granting Morgan's Rule 91a motion to dismiss. Fourth, Raggio contends that the trial court erred in granting Morgan's motion for summary judgment. Fifth, Raggio contends that the trial court abused its discretion in awarding Morgan an unreasonable amount of attorney's fees. Sixth, Raggio contends that the trial court abused its discretion in awarding Morgan an excessive amount in sanctions.

## I. Plea to the jurisdiction

On appeal, Morgan no longer relies on the trial court's jurisdictional ruling as a ground for affirmance against Raggio. But because we have a duty to determine subject-matter jurisdiction, *Self*, 690 S.W.3d at 20, and because the trial court granted Morgan's plea to the

51

jurisdiction, we consider it briefly here. Morgan's plea does not challenge the trial court's subject-matter jurisdiction. Thus, to the extent the trial court granted Morgan's plea on jurisdictional grounds, it erred, and we sustain Raggio's first issue concerning Morgan.[8]

## II. TCPA motion to dismiss

We now consider Morgan's TCPA motion to dismiss.

### a. Applicable law and standard of review

Raggio filed suit in September 2020, so Morgan's motion is governed by the version of the TCPA in effect at that time. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019). Under that version, if a legal action is "based on or is in response to" a defendant's exercise of one of these rights, the defendant may file a motion to dismiss the action. Tex. Civ. Prac. & Rem. Code § 27.003(a). The motion is then reviewed under the three-step, burden-shifting framework. *Id.* § 27.005(b)-(d).

The defendant has the initial burden "to demonstrate that the legal action is based on or is in response to" the defendant's exercise of a protected right. *Id.* § 27.005(b)(1). If the defendant meets his initial burden, the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the plaintiff establishes a prima facie case, the burden shifts back to the defendant

---

[8] We note that Morgan's plea asserts the affirmative defenses of res judicata, estoppel, and limitations, Tex. R. Civ. P. 94 (Affirmative Defenses), and argues no evidence exists for Raggio's claims, Tex. R. Civ. P. 166a(i) (No-Evidence Motion). We further note that Morgan raised the same affirmative defenses and no-evidence arguments in his summary-judgment motion, which we need not address due to our resolution of Morgan's TCPA motion.

to establish "an affirmative defense or other grounds on which the [defendant] is entitled to judgment as a matter of law." *Id.* § 27.005(d).

We review de novo whether each party met its respective burden. *Crossroads Cattle Co. v. AGEX Trading, LLC*, 607 S.W.3d 98, 101 (Tex. App.—Austin 2020, no pet.).

### b. Application

Our first step is to consider de novo whether Morgan met his initial burden to demonstrate that Raggio's legal action "is based on or is in response to" his exercise of the right to petition. Tex. Civ. Prac. & Rem. Code § 27.003(b)(1)(B); *Crossroads Cattle Co.*, 607 S.W.3d at 101. That is, we must determine whether Morgan demonstrated that Raggio's legal action is based on or in response to Morgan's making or submitting a statement or document in or pertaining to a judicial proceeding. Tex. Civ. Prac. & Rem. Code § 27.001(1), (4)(A)(i).

To do so, we consider Raggio's live petition. *See id.* § 27.006(a) ("In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings . . . ."). In its live petition, Raggio asserts four claims against Morgan: (1) theft, (2) malicious prosecution, (3) negligence, and (4) wrongful execution. Each claim is based on or in response to Morgan's alleged misrepresentations to the trial court in the UFCU Suit. Specifically, Raggio alleges that Morgan:

- "wrongfully commenced" the turnover receivership proceedings,

- wrongfully filed an ex parte motion for the trial court to appoint Sutton as a turnover receiver, and

- "misled the trial court" about Raggio's status "in order to take the Property."

53

Each of Raggio's claims is built on this factual foundation as the alleged wrongful conduct. Thus, Raggio's claims against Morgan are based on Morgan's communications (filing motions and making statements and arguments) in a judicial proceeding (the turnover receivership proceedings in the UFCU Suit).

We hold that Morgan met his initial burden to demonstrate that Raggio's legal action is based on or in response to his exercise of the right to petition.

### c. Prima facie case

We now consider de novo whether Raggio met its burden to establish "by clear and specific evidence a prima facie case" for its claims. *Id.* § 27.003(c); *Crossroads Cattle Co.*, 607 S.W.3d at 101.

### i. Theft

To meet its burden on its theft claim, Raggio had to establish by clear and specific evidence a prima facie case that:

(1)    Raggio had a possessory right to the Jesse Owens Residence,

(2)    Morgan unlawfully appropriated the Jesse Owens Residence,

(3)    without Raggio's effective consent, and

(4)    Raggio sustained damages as a result.

Tex. Penal Code § 31.03; Tex. Civ. Prac. & Rem. Code § 134.002.

In his TCPA motion and on appeal, Morgan contends that Raggio failed to establish a prima facie case for the second element—that it, failed to establish a prima facie case that Morgan "appropriated" the Jesse Owens Residence. We agree.

54

In its petition, Raggio generally alleges that Morgan "appropriated the Property without Raggio's effective consent." Raggio then alleges that the "appropriation" occurred through the trial court's appointing Sutton as turnover receiver and Sutton's taking possession of and selling the Jesse Owens Residence.

This allegation is insufficient to establish a prima facie case that Morgan appropriated the Jesse Owens Residence. As turnover receiver, Sutton held the Jesse Owens Residence in custodia legis as an agent of the trial court. *See Rich*, 492 S.W.3d at 760–61 ("Under receivership law generally, a receiver is an officer of the court, the medium through which the court acts.") (cleaned up); *Clark v. Clark*, 638 S.W.3d 829, 836 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("Once a trial court appoints a receiver, the receivership property is *in custodia legis*, or in the custody of the court."). Because Sutton acted as the trial court's agent and not Morgan's agent, Morgan did not "bring about a transfer or purported transfer of title" through Sutton. Tex. Penal Code § 31.01(4)(A) (defining "appropriate"). Nor did Morgan "acquire or otherwise exercise control over [the] property" through Sutton. *Id.* § 31.01(4)(B) (same).

We hold that Raggio failed to meet its burden to establish a prima facie case for its claim for theft.

### ii. Malicious prosecution

To meet its burden on its malicious-prosecution claim, Raggio had to establish by clear and specific evidence a prima facie case for the following elements:

(1)     the institution or continuation of civil proceedings against the plaintiff,

(2)     by or at the insistence of the defendant,

(3)     malice in the commencement of the proceeding,

(4)     lack of probable cause for the proceeding,

(5)     termination of the proceeding in the plaintiff's favor, and

(6)     special damages.

*Texas Beef Cattle Co.*, 921 S.W.2d at 207.

In his TCPA motion and on appeal, Morgan contends that Raggio failed to establish a prima facie case for the first element because Raggio was not a party to the civil proceedings forming the basis of its claim. We agree.

Under Texas law, to maintain a claim for malicious prosecution, the plaintiff must have been a party to the underlying civil proceedings. *See id.* A nonparty to the underlying proceedings cannot maintain a claim for malicious prosecution even if the nonparty was injured by the proceedings. *See Michels v. Zeifman*, No. 03-08-00287-CV, 2009 WL 349167, at *6 (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.) (expressly "declin[ing] to expand the malicious prosecution tort to an individual who was not a named party in the underlying proceeding"); *RRR Farms, Ltd. v. American Horse Prot. Ass'n*, 957 S.W.2d 121, 133 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (same). This limitation is consistent with the gravamen of a claim for malicious prosecution, which is "improperly making a party the subject of legal process to his detriment." *Browning-Ferris Indus., Inc. v. Zavaleta*, 827 S.W.2d 336, 338 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied).

Here, the civil proceedings forming the basis of Raggio's malicious-prosecution claim are the proceedings on Morgan's motions for sanctions and turnover relief. But Morgan moved for sanctions and turnover relief against Hammer, not Raggio. Raggio was not a named

party to these proceedings. Raggio itself admits that it was not a party to these proceedings: "it is true that Raggio was not a named party to this underlying matter." But Raggio insists it may nevertheless maintain it malicious-prosecution claim because its "interests were affected when [Morgan] obtained a receiver to sell Raggio's Property." Raggio's argument—that it may maintain its claim because the underlying proceedings caused Raggio to suffer damages—has been rejected by Texas courts, including this Court. *Michels*, 2009 WL 349167, at *6; *RRR Farms*, 957 S.W.2d at 133.

Because Raggio was not a party to the underlying civil proceedings, we hold that Raggio failed to meet its burden to establish a prima facie case for its claim for malicious prosecution.[9]

### iii. Negligence

To meet its burden on its negligence claim, Raggio had to establish by clear and specific evidence a prima facie case for:

(1)     a legal duty,

(2)     a breach of that duty, and

(3)     damages proximately resulting from the breach.

*Elephant Ins. Co.*, 644 S.W.3d at 144. Morgan contends that Raggio failed to establish a prima facie case for the first element—that is, failed to establish that Morgan owed Raggio a duty.

---

[9] We note that our holding does not mean Raggio was without remedy. In fact, Raggio had its day in court (federal court) and won, successfully suing the Hattaways for trespass to try title. *Raggio-2204 Jesse Owens, LLC v. Hattaway*, No. 1:19-CV-00697-ADA, 2025 WL 2946610, at *7 (W.D. Tex. July 11, 2025) (granting summary judgment for Raggio on its claim for trespass to try title).

A duty, for negligence purposes, "is a legally enforceable obligation to conform to a particular standard of conduct." *In re Luminant Generation Co.*, 711 S.W.3d 13, 21 (Tex. App.—Houston [1st Dist.] 2023, orig. proceeding). Whether a defendant owes a plaintiff a duty under particular facts is a question of law for the court to decide. *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 582 (Tex. 2023).

A duty "can be assumed by contract or imposed by law." *In re Luminant Generation*, 711 S.W.3d at 21. Here, Raggio does not contend that Morgan owed a contractual duty. Instead, Raggio contends that Morgan owed a duty under the common law.

To determine whether a defendant owes a duty under the common law, a court first determines whether the law has "previously held that a duty does or does not exist under the same or similar circumstances." *Mendez*, 671 S.W.3d at 583. If the law has previously addressed the issue, then the duty analysis ends and whether the duty exists is a matter of precedent. *See id.* If the law has not previously addressed whether a duty exists under the same or similar circumstances, then the issue is whether such a duty should be recognized, which is resolved by applying the interrelated *Phillips* factors.[10] *See id.* (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

In its live petition, Raggio alleges that Morgan and the other defendant-appellees owed a duty "to refrain from unlawfully selling or conveying property belonging to a third party (in this case, Raggio)." And in its response to Morgan's TCPA motion, Raggio contends that Morgan owed "a duty to exercise reasonable care to avoid a foreseeable risk of injury" to Raggio

---

[10] The *Phillips* factors weigh the (1) risk, (2) foreseeability, and (3) likelihood of injury against (4) the social utility of the actor's conduct, (5) the magnitude of the burden of guarding against the injury, and (6) the consequences of placing the burden on the defendant. *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 583 (Tex. 2023).

58

as well as "a duty to use ordinary care in making representations and in ascertaining the accuracy of information given to others."

But Raggio has failed to show that such a duty has been previously recognized to exist "under the same or similar circumstances." *Id.* Raggio has failed to cite a case (and we are aware of none) involving a judgment creditor sued for negligently seeking the turnover of property belonging not to the judgment debtor but to a third party. The cases cited by Raggio are inapposite. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987) (dramshop claim); *Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex. 1975) (suit against grocery store for injuries sustained in slip-and-fall accident); *Lowe's Home Ctrs., Inc. v. GSW Mktg., Inc.*, 293 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (premises-liability claim by employee who sustained on-the-job injury); *EDCO Prod., Inc. v. Hernandez*, 794 S.W.2d 69, 76 (Tex. App.—San Antonio 1990, writ denied) (suit against operator for injuries sustained while welding on oil tank).

Nor has Raggio argued for the creation of a new duty under these circumstances. We decline to recognize such a duty when

- Raggio has failed to apply the risk-utility test set forth in *Phillips*, *see Mendez*, 671 S.W.3d at 583;

- our own precedent cautions against doing so, *J.P. Morgan Chase Bank*, 302 S.W.3d at 535 (intermediate appellate courts should be reluctant "to recognize new common-law duty that has no existence in established law");

- the turnover statute already affords a degree of protection by requiring a judgment creditor to prove that the judgment debtor owns the property subject to turnover, *HSM Dev., Inc. v. Barclay Props., Ltd.*, 392 S.W.3d 749, 751 (Tex. App.—Dallas 2012, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 31.002(a)); and

- remedies for a party in Raggio's position already exist, such as intervention in the turnover proceedings, *Mitchell v. Turbine Res. Unltd., Inc.*, 523 S.W.3d 189, 200

(Tex. App.—Houston [14th Dist.] 2017, pet. denied), and a suit for trespass to try title, the latter of which, as noted earlier, Raggio successfully brought in federal district court, *Raggio-2204 Jesse Owens, LLC v. Hattaway*, No. 1:19-CV-00697-ADA, 2025 WL 2946610, at \*7 (W.D. Tex. July 11, 2025).

On this record, we hold that Raggio failed to meet its burden to establish a prima facie case for its negligence claim.

### iv.  Wrongful execution

To meet its burden on its wrongful-execution claim, Raggio had to establish by clear and specific evidence a prima facie case that its property had been "seized through execution of a writ."  Tex. Civ. Prac. & Rem. Code § 34.022(a).  Morgan argues that Raggio failed to meet its burden because it failed to show the Jesse Owens Residence was "seized through execution of a writ."  We agree.

Sutton took possession of the Jesse Owens Residence under a turnover order.  But "a turnover order is not a writ of execution."  *Raymond K. Oukrop, DDS, P.C. v. Tatsch*, No.03-12-00721-CV, 2014 WL 3734192, at \*4 (Tex. App.—Austin July 23, 2014, no pet.) (mem. op.).  A turnover receivership is a different remedy from a writ of execution, governed by a different chapter of the Civil Practice and Remedies Code.  *Compare* Tex. Civ. Prac. & Rem. Code ch. 31 (titled "Judgments" and governing turnover receiverships), *with id.* ch. 34 (titled "Execution on Judgments" and governing writs of execution).

As we have previously observed, "[t]he law could have, but does not, provide that turnover orders can be a form of writ of execution."  *Tatsch*, 2014 WL 3734192, at \*4.  "There is no dispute that turnover orders are among the several methods to collect or enforce judgments, but a turnover order is not a writ of execution . . . ."  *Id.*

60

We hold that Raggio failed to meet its burden to establish a prima facie case for its claim for wrongful execution.

Accordingly, we hold that Morgan met his ultimate burden to show he is entitled to dismissal of Raggio's claims under the TCPA. We overrule Raggio's second issue concerning Morgan.

## III. Other dispositive motions

Because we affirm the part of the trial court's order granting Morgan's TCPA motion and dismissing Raggio's claims, we need not consider whether the trial court erred in granting Morgan's Rule 91a motion to dismiss or in granting Morgan's motion for summary judgment.

## IV. Attorney's fees

We now consider whether the trial court abused its discretion by awarding Morgan an unreasonable amount of attorney's fees. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (amount of TCPA fee-award reviewed for abuse of discretion).

Under the TCPA, if the trial court grants a motion to dismiss, the trial court must award the moving party "reasonable attorney's fees incurred in defending against the legal action." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Sullivan*, 488 S.W.3d at 299 (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010).

The "reasonableness" determination rests within the trial court's sound discretion. *Sullivan*, 488 S.W.3d at 299. But "[i]n the proper exercise of its discretion, a trial judge is obliged to do more than simply act as a rubber-stamp, accepting carte blanche the amount

61

appearing on the bill." *McGibney v. Rauhauser*, 549 S.W.3d 816, 821 (Tex. App.—Fort Worth 2018, pet. denied). Instead, the party seeking the fee award must prove, and the trial court must determine, that "the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). "Charges for duplicative, excessive, or inadequately documented work should be excluded." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012). So should charges for work performed on other cases. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) (mandating award of fees "incurred in defending the legal action"); *McGibney*, 549 S.W.3d at 820 (holding trial court abused discretion in awarding TCPA movant fees for legal work performed on "a different case").

Here, the trial court awarded Morgan $46,863.75 in attorney's fees against Raggio. That is more than twice the amount awarded Gottfried ($22,972.50). It is nearly four times more than what was awarded to Sutton ($11,951.00). And it is over ten times more than what was awarded to the Real Estate Parties ($4,100.00). *See Sullivan*, 488 S.W.3d at 299 (TCPA fee award cannot be excessive).

The trial court awarded 100% of the attorney's fees that Morgan sought. But a review of Morgan's counsel's billing records reveals that a large portion of the fees was for drafting four dispositive motions that were highly duplicative—indeed, nearly verbatim copies— of each other, including Morgan's plea to the jurisdiction, which did not actually make any meaningful jurisdictional arguments and has been reversed in this appeal. *See El Apple I*, 370 S.W.3d at 762 (charges for duplicative work should be excluded from award). At the hearing on fees and sanctions, Morgan's counsel testified that he could not segregate the time he spent on each motion. But we fail to see why not when attorneys routinely do so by, say, keeping more detailed timesheets or even just testifying to a rough estimate of the amount of

time spent on each discrete task. *See, e.g.*, *Chapa*, 212 S.W.3d at 314 (attorneys could have provided opinion "stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no [unrecoverable] claim").

Morgan's counsel's billing records also include charges for categories of work that cannot be considered reasonable and necessary for Morgan's defense, such as revisions to an apparently unfiled summary-judgment motion that weren't made until after the trial court had already granted Morgan's four previously filed dispositive motions. And the records even include charges for legal work related to a different case involving the Hattaways. *See McGibney*, 549 S.W.3d at 820 (trial court abuses discretion by awarding TCPA attorney's fees for legal work performed on "a different case").

The trial court had no discretion to award fees for duplicative work, work unnecessary for Morgan's defense, and work on an entirely different case. Therefore, we hold that the trial court abused its discretion in awarding Morgan 100% of the attorney's fees he sought. Accordingly, we sustain Raggio's fifth issue concerning Morgan.

## V. Sanctions

Finally, we consider whether the trial court abused its discretion by awarding Morgan an excessive amount in sanctions against Raggio. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021) (TCPA sanctions award reviewed for abuse of discretion).

Under the TCPA, if the trial court grants a motion to dismiss, the trial court "may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions" in the future. Tex. Civ. Prac. & Rem. Code § 27.009(a)(2). Thus, sanctions under the

TCPA are awarded for deterrence, and a trial court abuses its discretion if the sanctions awarded are greater than necessary to achieve this purpose. *Berry v. Bay, Ltd.*, 643 S.W.3d 424, 433 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.).

Although the TCPA does not expressly list the guideposts by which this amount is to be determined, the caselaw construing the TCPA has identified various factors for courts to consider. *See LMP Austin Eng. Aire, LLC v. Lafayette Eng. Apartments, LP*, 654 S.W.3d 265, 293 (Tex. App.—Austin 2022), *review granted, judgment vacated, and remanded by agreement*, No. 22-0995, 2024 WL 2871287 (Tex. June 7, 2024); *ADB Int., LLC v. Wallace*, 606 S.W.3d 413, 443 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 71–72 (Tex. App.—Houston [14th Dist.] 2018), *aff'd in part, rev'd on other grounds in part*, 631 S.W.3d 40 (Tex. 2021). Those factors include, as relevant here:

- the amount of reasonable attorney's fees incurred in defending against the legal action,

- the plaintiff's history of filing similar suits, and

- any aggravating misconduct by either side.

*See id.*

Here, all three factors indicate the trial court's sanctions award was excessive. First, the amount awarded in sanctions ($50,000.00) exceeded the amount awarded in attorney's fees ($46,863.75). And, as just discussed, the amount awarded in fees was itself excessive and must be reduced on remand. *See Landry's*, 566 S.W.3d at 72 (reversing TCPA sanctions that substantially exceeded award of fees).

Second, Raggio has filed other lawsuits arising from the turnover and sale of the Jesse Owens Residence, but Raggio has largely succeeded in these suits. Raggio filed an original proceeding in this Court, which resulted in the vacatur of the Morgan Judgment, Turnover Order, and Distribution Order. *In re Raggio-2204 Jesse Owens, LLC*, 2018 WL 3384692, at *3. Raggio also filed a lawsuit against the Hattaways in federal district court, and during the pendency of this appeal, the district court granted summary judgment for Raggio on its claim for trespass to try title. *Raggio-2204 Jesse Owens, LLC*, 2025 WL 2946610, at *7. Raggio's success in federal district court, moreover, decrease the likelihood that Raggio will bring similar actions in the future, *see* Tex. Civ. Prac. & Rem. Code § 27.009(a)(2) (purpose of sanctions is "to deter the party who brought the legal action from bringing similar actions"), as Raggio appears to have obtained the principal relief it has been seeking in the suits.

Third, Morgan's own misconduct needlessly protracted and complicated the dispute and thereby increased the expenses of all parties involved. *See ADB Int.*, 606 S.W.3d at 443 ("Factors relevant when assessing the appropriate amount of sanctions in a TCPA case include . . . any aggravating misconduct . . . ."); *Landry's*, 566 S.W.3d at 72 (relevant factors include "the degree to which the offended person's own behavior caused the expenses for which recovery is sought"). Morgan filed a motion for judgment nunc pro tunc to remove the finality language from the UFCU Judgment despite the prior holding of this Court that the UFCU Judgment operated as the final judgment in the UFCU Suit. Not only did Morgan file the motion in contravention of our opinion, he failed to apprise the trial court of its existence.

For these reasons, we hold that the trial court's award of sanctions was made without reference to guiding rules and principles to such an extent that its ruling was arbitrary and unreasonable. Therefore, we hold that the trial court abused its discretion by awarding

Morgan $50,000.00 in sanctions against Raggio. Accordingly, we sustain Raggio's sixth issue concerning Morgan.

## RAGGIO V. GOTTFRIED

On appeal, Raggio raises three issues concerning Gottfried. First, Raggio contends that the trial court erred in granting Gottfried's TCPA motion to dismiss. Second, Raggio contends that the trial court abused its discretion in awarding Gottfried an unreasonable amount of attorney's fees. Third, Raggio contends that the trial court abused its discretion in awarding Gottfried an excessive amount in sanctions.

### I. TCPA motion to dismiss

We begin our discussion of these issues with Gottfried's TCPA motion to dismiss.

#### a. Applicable law and standard of review

The law and standard of review that applies to Morgan's TCPA motion applies to Gottfried's TCPA motion.

#### b. Application

The first step in our review is to consider de novo whether Gottfried met his initial burden to demonstrate that Raggio's legal action is based on or in response to Gottfried's exercise of the right to petition, i.e., Gottfried's making or submitting a statement or document in or pertaining to a judicial proceeding. Tex. Civ. Prac. & Rem. Code § 27.003(b)(1)(B); *Crossroads Cattle Co.*, 607 S.W.3d at 101.

In its live petition, *see* Tex. Civ. Prac. & Rem. Code § 27.006(a) (court considers pleadings to determine whether TCPA applies), Raggio asserts three claims against Gottfried:

(1) theft, (2) negligence, and (3) wrongful execution. Each claim is based on the same fundamental premise: In his representation of Morgan in the UFCU Suit, Gottfried mischaracterized the law and facts to convince the trial court to sanction Hammer and order the turnover and sale of the Jesse Owens Residence to satisfy the sanctions award. In support of its claims, Raggio alleges that Gottfried:

- wrongfully filed a no-notice motion for sanctions against Hammer,

- falsely claimed the lis pendens filed by Hammer had delayed the sale of the Costa Bella Residence to a third-party buyer,

- wrongfully filed an ex parte motion to appoint a turnover receiver,

- falsely claimed that Hammer was the sole member of Raggio, that Raggio had forfeited its existence, and that Hammer effectively owned the Jesse Owens Residence in her personal capacity,

- wrongfully abandoned his motion for a charging order and instead asked the trial court to directly authorize the sale of the Jesse Owens Residence, and

- wrongfully filed a motion for judgment nunc pro tunc in an attempt to circumvent our holding that the UFCU Judgment operated as the final judgment in that case.

See id. § 27.006(a) (in reviewing TCPA motion, court "shall consider the pleadings").

In sum, Raggio's claims against Gottfried are based on the motions he filed and the statements and arguments he made in the UFCU Suit. Thus, Raggio's claims are based on communications (filing motions and making statements and arguments) in a judicial proceeding (the UFCU Suit). We hold that Gottfried met his initial burden to demonstrate that Raggio's legal action is based on or in response to his exercise of the right to petition. See Youngkin, 546 S.W.3d at 680–81 (attorney speaking on behalf of client in courtroom qualifies as "exercise of the right to petition" under TCPA).

### c. Affirmative defense

Because the third step is dispositive, we assume without deciding that Raggio established a prima facie case for its claims and consider de novo whether Gottfried established an affirmative defense. Tex. Civ. Prac. & Rem. Code § 27.005(c), (d); *Crossroads Cattle Co.*, 607 S.W.3d at 101. Gottfried argues he is entitled to dismissal because he established the affirmative defense of attorney immunity. *See Cantey Hanger*, 467 S.W.3d at 481. We agree.

Under Texas law, "an attorney is immune from liability to nonclients for conduct within the scope of his representation of his clients." *Youngkin*, 546 S.W.3d at 681. "Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer." *Id.* This inquiry "focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct." *Id.*

Thus, to determine whether the defense applies here, "we must look beyond [Raggio]'s characterizations of [Gottfried's] activity as fraudulent and conspiratorial and focus on the conduct at issue." *Id.* at 682. That conduct consists of:

- filing and arguing a motion for sanctions,

- filing and arguing a motion for the appointment of a turnover receiver,

- filing a motion for a charging order and then, at the hearing, abandoning the motion and requesting that the trial court instead directly authorize the sale of the Jesse Owens Residence, and

- filing and arguing a motion for judgment nunc pro tunc.

This conduct falls well within the scope of Gottfried's representation of Morgan. *Id.* ("filing lawsuits and pleadings" qualify as conduct within scope of lawyer's representation).

68

We hold that Gottfried has met his burden to establish an affirmative defense to Raggio's claims. Accordingly, we hold that Gottfried has met his ultimate burden to show he is entitled to dismissal of Raggio's claims under the TCPA. We overrule Raggio's first issue concerning Gottfried.

## II. Attorney's fees

We now consider whether the trial court abused its discretion by awarding Gottfried an unreasonable amount of attorney's fees. *Sullivan*, 488 S.W.3d at 299 (fee award reviewed for abuse of discretion).

In the trial court, Morgan, Sutton, the Real Estate Parties, and Gottfried filed motions to recover their attorney's fees supported by the declarations and invoices of their respective lawyers. In its response, Raggio made specific objections to and arguments against the amount of fees sought by Morgan, Sutton, and the Real Estate Parties, but Raggio did not make any specific objection to or argument against the amount sought by Gottfried.

At that hearing on fees, Gottfried's counsel, Michael Johnson, submitted his invoices and testified to his skill and experience, his hourly rate, the amount of time he spent working on the case, including the time he spent preparing Gottfried's TCPA motion to dismiss and Gottfried's reply to Raggio's response, and the reasonableness and necessity of the work. On cross-examination, Raggio's counsel did not challenge Johnson's testimony other than by generally suggesting that TCPA motions are "fairly simple" and by criticizing Johnson for charging fees for consulting with counsel for Gottfried's co-defendants. Raggio's counsel again failed to make any specific objection to or argument against the invoices submitted by Johnson. After the hearing, the trial court awarded Gottfried $22,972.50 in attorney's fees against Raggio.

69

Now, on appeal, Raggio generally argues that Gottfried's showing in support of that award failed to comply with the requirements of Texas law as set out in *Rohrmoos Venture*. But Raggio fails to cite to or meaningfully discuss the evidence presented at the hearing or otherwise make a specific argument challenging the reasonableness and necessity of the amount of fees awarded to Gottfried.

We hold that Raggio has failed to show the trial court abused its discretion in awarding Gottfried his attorney's fees. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Lakeway Psychiatry & Behavioral Health, PLLC v. Brite*, 656 S.W.3d 621, 637 (Tex. App.—El Paso 2022, no pet.) (overruling challenge to attorney-fee award when appellant "fail[ed] to provide a meaningful analysis or supporting authority showing [the fees] were excessive or not recoverable"). Accordingly, we overrule Raggio's second issue concerning Gottfried.

### III. Sanctions

Finally, we consider the trial court's award of sanctions to Gottfried. For the same reasons we hold that the trial court abused its discretion in awarding Morgan $50,000.00 in sanctions, we hold that the trial court abused its discretion in awarding Gottfried $100,000.00 in sanctions. *Landry's*, 631 S.W.3d at 46 (sanctions award reviewed for abuse of discretion).

First, the amount in sanctions ($100,000.00) substantially exceeds the amount awarded in attorney's fees ($22,972.50). *Compare LMP Austin Eng. Aire*, 654 S.W.3d at 293 (affirming TCPA sanctions that were "less than but nearly equal to the award of TCPA

70

attorney's fees"), *with Landry's*, 566 S.W.3d at 72 (reversing TCPA sanctions that substantially exceeded award of fees).

Second, Raggio has filed other lawsuits arising from the turnover and sale of the Jesse Owens Residence, and Raggio has largely succeeded in these suits. *See In re Raggio-2204 Jesse Owens, LLC*, 2018 WL 3384692, at *3 (mandamus proceeding resulting in vacatur of Morgan Judgment, Turnover Order, and Distribution Order); *Raggio-2204 Jesse Owens*, 2025 WL 2946610, at *7 (federal-district-court order granting summary judgment for Raggio on claim for trespass to try title). Raggio's successful litigation history shows that both (1) Raggio's current suit, while ultimately unsuccessful, was not "designed only to chill" Gottfried's protected rights but was brought in good faith to obtain a legitimate form of relief, *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (discussing TCPA's purpose), and (2) Raggio is unlikely to bring a similar action in future, since Raggio has obtained an order determining it to be the rightful owner of the Jesse Owens Residence, *see* Tex. Civ. Prac. & Rem. Code § 27.009(a)(2) (purpose of sanctions is "to deter the party who brought the legal action from bringing similar actions").

Third, Gottfried, in furtherance of his representation of Morgan, filed the motion for judgment nunc pro tunc without apprising the trial court of our prior holding, needlessly protracting the dispute and increasing the cost of the litigation. While Gottfried may be legally entitled to the affirmative defense of immunity for this conduct, it is still relevant to determining what amount, if any, he should be awarded in sanctions. *See Landry's*, 566 S.W.3d at 71–72 (identifying nonexclusive list of factors courts consider in assessing sanctions under Chapter 10 as offering guidance when assessing TCPA sanctions, including among others "the degree to which the offended person's own behavior caused the expenses for which recovery is sought").

71

We hold that the trial court abused its discretion by awarding Gottfried $100,000.00 in sanctions against Raggio.[11]  Accordingly, we sustain Raggio's third issue concerning Gottfried.

## RAGGIO V. SUTTON

On appeal, Raggio raises three issues concerning Sutton.  First, Raggio contends that the trial court erred in granting Sutton's TCPA motion to dismiss.  Second, Raggio contends that the trial court erred in granting Sutton's Rule 91a motion to dismiss.  Third, Raggio contends that the trial court abused its discretion in awarding Sutton an unreasonable amount of attorney's fees.

### I.  TCPA motion to dismiss

We begin our discussion of these issues with Sutton's TCPA motion to dismiss.

#### a.  Applicable law and standard of review

The law and standard of review that applies to Morgan's and Gottfried's TCPA motions applies to Sutton's TCPA motion.

#### b.  Application

The first step in our review is to consider de novo whether Sutton met his initial burden to demonstrate that Raggio's legal action is based on or in response to Sutton's exercise of the right to petition, i.e., Sutton's making or submitting a statement or document in or

---

[11]  As discussed earlier in our opinion, the trial court held Hammer and Raggio jointly and severally liable for Gottfried's sanctions, and this holding was erroneous:  Because alter-ego liability is the only possible basis for holding Hammer and Raggio jointly and severally liable, and because the defendant-appellees presented no evidence to support such a finding, there was no basis for the trial court to hold Hammer jointly and severally liable for the sanctions awarded against Raggio.

72

pertaining to a judicial proceeding. Tex. Civ. Prac. & Rem. Code § 27.003(b)(1)(B); *Crossroads Cattle Co.*, 607 S.W.3d at 101.

In its live petition, *see* Tex. Civ. Prac. & Rem. Code § 27.006(a), Raggio asserts three claims against Sutton: (1) theft, (2) negligence, and (3) wrongful execution. Each claim is based on the same general theory: In his capacity as turnover receiver in the UFCU Suit, Sutton misrepresented the law to convince the trial court to approve the sale of the Jesse Owens Residence and then, upon approval, took steps to effectuate the sale of the property. In support of its claims, Raggio alleges that Sutton

- misrepresented the law in arguing that Hammer was the sole member of Raggio, that Raggio had forfeited its existence, and that Hammer effectively owned the Jesse Owens Residence in her personal capacity,

- executed a contract to sell the Jesse Owens Residence,

- wrongfully filed a motion for court approval of the sale of the Jesse Owens Residence,

- wrongfully "abandoned" the motion for charging order filed by Morgan and asked the trial court to directly authorize the sale of the property, and

- executed a deed as grantor conveying the Jesse Owens Residence to the Hattaways.

Thus, Raggio's claims against Sutton are based on Sutton's communications— i.e., Sutton's filing a motion to approve the sale of the Jesse Owens Residence, Sutton's arguing the motion at the hearing, and Sutton's signing the deed to close the sale. These communications were made in or otherwise pertained to a judicial proceeding—i.e., the turnover receivership proceedings in the UFCU Suit. *See id.* § 31.002(b)(3) (turnover receivership is court proceeding

73

to collect on judgment). We hold that Sutton met his initial burden to demonstrate that Raggio's legal action is based on or in response to his exercise of the right to petition.

### c. Affirmative defense

Because the third step is dispositive, we assume without deciding that Raggio established a prima facie case for its claims and consider de novo whether Sutton established an affirmative defense. *Id.* § 27.005(c), (d); *Crossroads Cattle Co.*, 607 S.W.3d at 101. Sutton argues that he is entitled to dismissal because he established the affirmative defense of derived judicial immunity. *See Halsey*, 87 S.W.3d at 553. We agree.

As previously discussed, a court-appointed receiver is immune from liability for acts performed within the scope of his delegated authority. *Id.* at 554; *Rehabworks*, 2009 WL 483207, at *2; *Wolf*, 717 S.W.3d at 924; *Milligan*, 657 S.W.3d at 366. So, if Raggio's claims are based on acts performed within the scope of Sutton's delegated authority, Sutton is immune from liability.

Here, the trial court authorized Sutton to take possession of the Jesse Owens Residence, sell it, and "take all necessary steps" to ensure the proceeds be applied toward payment of the Morgan Judgment. Raggio's claims against Sutton are based on Sutton's executing a contract for the sale of the Jesse Owens Residence, filing a motion to approve the sale, arguing the motion, and, upon approval, signing the deed to close the sale. In other words, Raggio's claims are based on Sutton's taking steps to sell the Jesse Owens Residence, which were within the scope of his delegated authority as receiver. *See Wolf*, 717 S.W.3d at 925–26; *Ramirez*, 2005 WL 1812595, at *1.

74

In its petition, Raggio recognizes that the trial court "directed Sutton to sell the [Jesse Owens Residence] and apply the proceeds toward the payment of the Morgan Judgment." Raggio does not allege Sutton acted outside the scope of his delegated authority. Raggio nevertheless insists that Sutton is not immune from liability. Under Texas law, judicial immunity does not apply to acts performed "in a complete absence of all jurisdiction." *James*, 438 S.W.3d at 712. Because its plenary jurisdiction had already expired, the trial court lacked subject-matter jurisdiction to appoint Sutton as receiver and authorize him to take possession of and sell the Jesse Owens Residence. For this reason, Raggio contends that Sutton acted in clear absence of jurisdiction and, therefore, is not entitled to derived judicial immunity. We disagree.

Raggio misconstrues the test for determining whether the trial court has jurisdiction for immunity purposes. The question is not whether the trial court actually had subject-matter jurisdiction to enter the turnover orders. Rather, the question is whether the entry of turnover orders is the type of thing the trial court normally has jurisdiction to do. *Id.* (question is whether judge "had jurisdiction to conduct proceedings of the sort that are the basis of [the plaintiff]'s complaint"). The answer to that question is yes.

We hold that Sutton met his burden to establish an affirmative defense to Raggio's claims. Accordingly, we hold that Sutton met his ultimate burden to show that he is entitled to dismissal of Raggio's claims under the TCPA. We overrule Raggio's first issue concerning Sutton.

## II. Rule 91a motion to dismiss

Because we affirm the trial court's order granting Sutton's TCPA motion and dismissing Raggio's claims, we need not consider whether the trial court erred in granting Sutton's Rule 91a motion to dismiss.

## III. Attorney's fees

We end our discussion of Raggio's issues concerning Sutton by considering whether the trial court abused its discretion by awarding Sutton an unreasonable or unnecessary amount of attorney's fees. *Sullivan*, 488 S.W.3d at 299 (fee award reviewed for abuse of discretion).

The trial court awarded Sutton $11,951.00 in attorney's fees against Raggio. Raggio again generally argues that Sutton's evidence in support of that award failed to comply with *Rohrmoos Venture*. But Sutton shows us where his counsel testified to his skill and expertise, his hourly rate, the time he spent working on the case, the particular tasks performed, and the reasonableness and necessity of the work. *See Rohrmoos Venture*, 578 S.W.3d at 498–99.

On this record, we hold that Raggio has failed to show that the trial court abused its discretion in awarding Sutton his attorney's fees. Accordingly, we overrule Raggio's third issue concerning Sutton. *See Brite*, 656 S.W.3d at 637 (overruling challenge to attorney-fee award when appellant "fail[ed] to provide a meaningful analysis or supporting authority showing [the fees] were excessive or not recoverable").

On appeal, Raggio raises three issues concerning the Real Estate Parties. First, Raggio contends that the trial court erred in granting their Rule 91a motion to dismiss. Second, Raggio contends that the trial court erred in granting their TCPA motion to dismiss. Third, Raggio contends that the trial court abused its discretion by awarding them an unreasonable amount of attorney's fees.

## I. Rule 91a motion to dismiss

We begin by considering de novo whether the trial court erred in granting the Real Estate Parties' Rule 91a motion to dismiss. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020) (appellate court reviews Rule 91a motion de novo).

Under Rule 91a, a party "may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.*

Raggio sued the Real Estate Parties for negligence, theft, and wrongful execution and sale of property. The entirety of Raggio's allegations in support of these claims consists of the following:

- Bockholt Realty and its owners, Brent and Susan Bockholt (collectively, "Bockholt") served as Sutton's real-estate broker and agent for the sale of the Jesse Owens Residence.

- Bockholt was present at the hearing on Sutton's motion to approve the sale of the Jesse Owens Residence.

- Bockholt knew that Raggio, a non-party, was the record owner of the Jesse Owens Residence and that Sutton had been appointed to collect a judgment against Hammer, not Raggio.

- Stewart Title served as the title company and escrow agent at closing.

These allegations, taken as true, do not entitle Raggio the relief on its claims against the Real Estate Parties.

Raggio's allegations concerning Bockholt show that Bockholt served as the broker and agent for a court-appointed receiver in a court-ordered sale of property. Raggio's petition makes no allegations showing that Bockholt owed Raggio some duty in this transaction. *See Black ± Vernooy Architects v. Smith*, 346 S.W.3d 877, 882 (Tex. App.—Austin 2011, pet. denied) (explaining that plaintiff must establish both existence and violation of duty owed by defendant). Nor does Raggio's petition make any allegations against Bockholt in support of its claims for theft and wrongful execution and sale of property. Bockholt was only involved in the transactions because it was hired by Sutton to accomplish the sale of the property as the court's order authorized Sutton to do.

Raggio's allegations concerning Stewart Title show that Stewart Title was the title company and escrow agent that closed a court-ordered sale between a court-appointed receiver and third-party buyers. Again, Raggio's petition makes no allegations showing that Stewart Title owned Raggio some duty in this transaction. Under Texas law, an escrow agent for a real estate transaction owes a fiduciary duty to both the buyers (here, the Hattaways) and the seller (here, Sutton, in his capacity as court-appointed receiver) in an escrow agreement. *Gary E. Patterson & Assocs. v. Holub*, 264 S.W.3d 180, 203 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

78

But the same is not true for a third-party "stranger." *See Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 872 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (title company owed no duty to stranger in underlying real-estate escrow agreement). Here, Raggio was a third-party stranger to the transaction because Sutton wasn't selling the Jesse Owens Residence on behalf of Raggio; he was selling it on behalf of the trial court, which had taken constructive possession of the property. Nor does Raggio's petition make any allegations against Stewart Title in support of its claims for theft and wrongful execution and sale.

We hold that Raggio has failed to show that the trial court erred in granting the Real Estate Parties' 91a motion to dismiss. Accordingly, we overrule Raggio's first issue concerning the Real Estate Parties.

## II. TCPA motion to dismiss

Because we affirm the trial court's order granting the Real Estate Parties' 91a motion to dismiss, we need not consider whether the trial court erred in granting their TCPA motion to dismiss.

## III. Attorney's fees

Finally, we consider whether the trial court abused its discretion by awarding the Real Estate Parties an unreasonable or unnecessary amount of attorney's fees. The trial court awarded the Real Estate Parties a total of $4,100.00 in attorney's fees ($4,000.00 for the Bockholt parties and $100.00 for Stewart Title). Like its attorney's fee complaints related to Gottfried and Sutton, Raggio generally argues that the award is unreasonable and unnecessary. The record shows that, at the hearing, the Real Estate Parties' counsel testified to their skill and experience, their hourly billing rate, the amount of time they spent working on the case, and the

79

reasonableness and necessity of the work. *See Rohrmoos Venture*, 578 S.W.3d at 498–99. On this record, we hold that Raggio has failed to show that the trial court abused its discretion by awarding the Real Estate Parties an unreasonable or unnecessary amount of attorney's fees. Accordingly, we overrule Raggio's third issue concerning the Real Estate Parties.

## CONCLUSION

We affirm the orders of the trial court except in the following respects: With respect to Hammer's issues concerning Morgan, we reverse

- the part of the trial court's Amended Order on Dispositive Motions, dated March 11, 2021, that grants Morgan's Plea to the Jurisdiction on Hammer's claims;

- the part of the trial court's Amended Order on Dispositive Motions, dated March 11, 2021, that grants the part of Morgan's Traditional and No-Evidence Motion for Summary Judgment that seeks dismissal of Hammer's claims against Morgan for malicious prosecution, intrusion on seclusion, and conspiracy to commit intrusion on seclusion;

- the part of the trial court's Order, dated March 7, 2023, that dismisses and orders that Hammer take nothing on her claims against Morgan for intrusion on seclusion and conspiracy to commit intrusion on seclusion; and

- the part of the trial court's Order, dated March 7, 2023, that awards Morgan and his counsel attorney's fees and expenses against Hammer.

With respect to Hammer's issues concerning Gottfried, we reverse

- the part of the trial court's Order, dated April 4, 2023, that awards Gottfried and his counsel attorney's fees and expenses against Hammer;

- the part of the trial court's Order, dated April 4, 2023, that awards Gottfried sanctions against Hammer; and

- the part of the trial court's Order, dated April 4, 2023, that dismisses and orders that Hammer take nothing on her claims against Gottfried for intrusion on seclusion and conspiracy to commit intrusion on seclusion.

With respect to Hammer's issues concerning Sutton, we reverse the part of the trial court's Order Granting Defendant Sutton's Motion for Summary Judgment, dated September 11, 2020, that dismisses and orders that Hammer take nothing on her claims against Sutton for intrusion on seclusion and conspiracy to commit intrusion on seclusion.

With respect to Raggio's issues concerning Morgan, we reverse

- the part of the trial court's Amended Order on Dispositive Motions, dated March 11, 2021, that grants Morgan's Plea to the Jurisdiction on Raggio's claims;

- the part of the trial court's Order, dated March 7, 2023, that awards Morgan $46,863.75 in attorney's fees against Raggio; and

- the part of the trial court's Order, dated March 7, 2023, that awards Morgan $50,000.00 in sanctions against Raggio.

Finally, with respect to Raggio's issues concerning Gottfried, we reverse the part of the trial court's Order, dated April 4, 2023, that awards Gottfried $100,000.00 in sanctions against Raggio.

We remand to the trial court for further proceedings consistent with this opinion, including proceedings on:

- Hammer's claims against Morgan for malicious prosecution, intrusion on seclusion, and conspiracy;

- Hammer's claims against Gottfried for intrusion on seclusion and conspiracy;

- Hammer's claims against Sutton for intrusion on seclusion and conspiracy;

81

- Morgan's claims for attorney's fees and sanctions against Raggio under the TCPA; and

- Gottfried's claim for sanctions against Raggio under the TCPA.

_____

Maggie Ellis, Justice

Before Justices Triana, Theofanis, and Ellis

Affirmed in part; Reversed and Remanded in part

Filed:   March 20, 2026